# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1660WM

_____

Leamon White,
　　　　　　*
　　　　　　*
　　　Appellant,　*
　　　　　　*　On Appeal from the United
　　　　　　*　States District Court
　　v.　　　*　for the Western District
　　　　　　*　of Missouri.
　　　　　　*
Michael S. Bowersox,　*
Superintendent,　*
　　　　　　*
　　　Appellee.　*

_____

Submitted: December 13, 1999
Resubmitted on Supplemental Briefs: February 10, 2000
Filed: March 14, 2000

_____

Before RICHARD S. ARNOLD and LOKEN, Circuit Judges, and MELLOY,[1] District
　　Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.

_____

[1]The Hon. Michael J. Melloy, United States District Judge for the Northern
District of Iowa, sitting by designation.

Leamon White appeals the denial of his petition for a writ of habeas corpus. The District Court held that all of Mr. White's claims were procedurally barred, except those adequately raised by his first amended post-conviction motion in the state courts. We reverse and remand for further proceedings on the merits of those claims the District Court held to be procedurally barred. We hold that the state procedural rule that barred Mr. White's second amended motion was inadequate to bar federal consideration of these claims. We affirm the remaining portion of the District Court's judgment. We agree with that Court that the claims it found open on federal habeas are without merit.

I.

Mr. White was tried and convicted of first degree murder. He was sentenced to death. Mr. White appealed to the Missouri Supreme Court, which ultimately affirmed his conviction. While Mr. White's direct appeal was proceeding, he filed a pro se motion in the Circuit Court of Jackson County, Missouri, for post-conviction relief. Mr. White's post-conviction motion became entangled in procedural difficulties because his court-appointed attorneys failed to file a timely amended motion on his behalf. Under Missouri law, this failure constituted "abandonment," and Mr. White was owed some remedy for his attorneys' failures. As a remedy, the Missouri courts treated as timely the first, but not the second, of two untimely motions filed by Mr. White's attorneys. They limited the remedy to the first motion on the ground that Mr. White had improperly signed a "blank verification." The predominant issue on appeal is whether the procedural rule barring the second motion was an adequate state ground. This issue is practically determinative of Mr. White's habeas petition because almost all of the claims raised in the first motion, which was hastily drafted, were procedurally defaulted due to inadequate fact pleading.

On August 17, 1989, Mr. White filed his pro se motion for post-conviction relief in the Circuit Court pursuant to Mo. R. Crim. P. 29.15. On September 25, 1989, the

Court appointed the Missouri Public Defender's Office to represent Mr. White in post-conviction proceedings. Under the Rule, counsel has a duty to file an amended motion if, after consulting with the movant, there appear to be grounds for doing so. Just five days before the amended motion was due, the Missouri Public Defender's Office assigned an attorney, Larry Pace, to represent Mr. White.

On October 20, 1989, Mr. Pace entered his appearance. He moved for and was granted an extension, until November 23, 1989, to file an amended motion. Under Rule 29.15, this was the only extension allowed. On November 9, 1989, fourteen days before the amended motion had to be filed, Mr. Pace improperly withdrew from the case without permission of the Court. It is now undisputed that this constituted abandonment under Missouri law. The Public Defender's Office replaced him with a second attorney, Joe Locascio. At that time, Mr. Pace had not yet begun to write an amended motion, had not secured the files of Mr. White's trial attorneys, and had not met with Mr. White.

Five days later and nine days before the final deadline, Mr. Locascio met with Mr. White to discuss his post-conviction motion. This was Mr. White's first meeting with any attorney to discuss his post-conviction motion. While at the prison, Mr. Locascio had Mr. White sign a "blank" verification, to be added to the amended motion once it was written.[2] Mr. Locascio did this because Rule 29.15 motions are void unless verified by the movant. With time so short, he felt there would be no opportunity to obtain the verification properly after the motion was written.

---

[2]Mo. R. Crim. P. 29.15 provides: "The movant shall verify the motion, declaring that he has listed all grounds for relief known to him and acknowledging his understanding that he waives any ground for relief known to him that is not listed in the motion."

Despite this short-cut with the verification, Mr. Locascio missed the November 23, 1989, deadline for filing Mr. White's amended motion. As the Supreme Court of Missouri later held, this constituted a second instance of abandonment under Missouri law. On November 27, 1989, Mr. Locascio filed the amended motion, four days late, and a separate motion for a thirty-day extension to file a second amended motion. Although the Circuit Court lacked the jurisdiction to do so, it granted leave to file a second motion and an extension until January 9, 1990. Mr. Locascio filed a second amended motion on January 8, 1990. Because the Court lacked jurisdiction to grant the extension, this motion was later ruled untimely. On August 1, 1990, the Circuit Court denied relief on all of Mr. White's post-conviction motions.

On appeal, the Missouri Supreme Court reversed and remanded for a determination of whether Mr. White's first and second attorneys had abandoned him. White v. State, 813 S.W.2d 862 (Mo. 1991) (en banc) ("White I"). Under Rule 29.15, it was the duty of appointed counsel to determine whether sufficient facts were asserted in the pro se motion to support the claims that it raised; to determine whether the movant had included in the pro se motion all claims for post-conviction relief known to the movant; and to correct any deficiencies in the pro se motion by filing an amended motion. Although there was no right to effective assistance of post-conviction counsel, Missouri provided a remedy, as a matter of state law, where appointed counsel "abandoned" his client by completely failing to perform these statutory duties. Luleff v. State, 807 S.W.2d 495 (Mo. 1991) (en banc). The Missouri Supreme Court, therefore, remanded for determination of whether Mr. White's first and second attorneys had abandoned him by withdrawing without leave of court, by failing to file a timely amended motion, and by failing to obtain a proper verification of the amended motion. On remand, the Circuit Court found no abandonment, but it was again reversed on appeal to the Missouri Supreme Court.

The Missouri Supreme Court found abandonment but provided only a limited remedy because Mr. White had signed the "blank" verification. White v. State, 873

-4-

S.W.2d 590 (Mo. 1994) (en banc) ("White II").  The Missouri Supreme Court held that Mr. White had been abandoned when his first attorney withdrew without court permission.  This constituted abandonment because Mr. White's "second counsel did not have enough time to file a timely amended motion after he entered his appearance." Id. at 597.  Additionally, the Court found that Mr. White had been abandoned when his second attorney failed to file a timely amended motion.[3]  The Court found that "no action or inaction by [Mr. White] contributed to the delayed filing."  Ibid.

As a remedy, the Missouri Supreme Court forgave the untimely filing of the first amended motion.  The Court, however, refused to apply this remedy to the second amended motion.  The Court reasoned, first, that Mr. White had been abandoned only with respect to the timing of the first amended motion, not with respect to its content. Second, the Court considered that Mr. White had waived any claim that the first amended motion was incomplete when he signed the "blank" verification:  "By signing the verification in blank, defendant knew or should have known that he was an active participant in falsely verifying a document that had not yet been written."  Id. at 595.

The Missouri Supreme Court remanded to the Circuit Court for consideration only of those claims made in Mr. White's first amended motion.  The Circuit Court denied all of Mr. White's claims.  On appeal, the Missouri Supreme Court affirmed. White v. State, 939 S.W.2d 887 (Mo. 1997) (en banc) ("White III").  The Missouri Supreme Court addressed only six of Mr. White's twenty-eight claims on the merits. The Court held that the rest of Mr. White's claims were procedurally defaulted due to the inadequate pleading of the first amended motion.  Specifically, the Court found that

---

[3]The Missouri Supreme Court also requested an investigation by Missouri's Chief Disciplinary Counsel to determine whether any ethical rules had been broken by the Public Defender's Office or the two attorneys.

in twenty-two of his claims, Mr. White had failed to plead sufficient facts to warrant relief.[4]

On December 26, 1997, Mr. White filed his petition for a writ of habeas corpus in the District Court. The Court held that the Missouri Supreme Court's rejection of the second amended motion was based on an independent and adequate state ground. Likewise, the Court held that Missouri's fact-pleading requirement was an independent and adequate state ground. Accordingly, the District Court found that all of Mr. White's claims were procedurally barred, except those six claims that the Missouri Supreme Court had found adequately raised in the first amended motion. On these six claims, the District Court ruled against Mr. White on the merits. Three of these claims have been appealed, along with the District Court's ruling on procedural bar.

II.

Federal review of a habeas petition is barred when a state court dismisses or rejects a prisoner's claims on independent and adequate state grounds unless a petitioner can demonstrate either (1) cause and prejudice or (2) actual innocence. Coleman v. Thompson, 501 U.S. 722, 750 (1991). Procedural default of a claim under state law may constitute an independent and adequate state ground, Harris v. Reed, 489 U.S. 255, 262 (1989), but only if the state procedural rule is firmly established, regularly followed, and readily ascertainable. Ford v. Georgia, 498 U.S. 411, 423-4 (1991). The underlying principle is "that failure to follow state procedures will warrant withdrawal of a federal remedy only if those procedures provided the habeas petitioner

---

[4]Our holding that consideration of the second amended petition was not barred by an adequate state procedural ground makes it unnecessary to consider the adequacy of the state pleading rules held to bar most of the claims in the first amended petition. We likewise need not consider petitioner's assertion that his actual innocence excuses any procedural default.

with a fair opportunity to seek relief in state court." Easter v. Endell, 37 F.3d 1343, 1347 (8th Cir. 1994). Or, as Justice Holmes expressed it, "[w]hatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." Davis v. Wechsler, 263 U.S. 22, 24 (1923). We believe that Mr. White was denied a fair opportunity to seek relief in this case because the procedural rule that barred his second amended petition was neither firmly established nor readily ascertainable.

The procedural default in this case was based on two limitations of Missouri's remedy for abandonment newly introduced in Mr. White's own case. First, the Missouri Supreme Court held that Mr. White's second amended motion was not entitled to consideration because he had been abandoned only as to the timing of his first amended motion, but not as to its content. At the time of Mr. White's case, the Missouri Supreme Court had just recently decided that there should be a remedy for attorney abandonment in post-conviction proceedings. The Court had stated a general rule that relief was appropriate where the attorney, and not the movant, was responsible for the untimeliness or improper verification of the motion. Mr. White's case, White II, was the first in which the distinction between timing and content was announced and employed to limit the remedy available to an abandoned defendant.

Even in retrospect, the basis for this distinction is unclear to us. The Missouri Supreme Court found that Mr. White's first attorney had abandoned him by leaving his second attorney without time to file a timely motion. We cannot see why such an abandonment, forcing Mr. White's second attorney to prepare and write a motion in fourteen days, would not include the content of the motion. Mr. White's attorney lacked the time to write a motion because he lacked the time to write its content. With no concern for content, one day would have been sufficient. As confusing as this distinction is in retrospect, we have no trouble finding that neither Mr. White nor his

attorneys could reasonably have anticipated any such rule in advance of its first application in Mr. White's own case.

Before White II, the Missouri Supreme Court had held that where abandonment occurred new counsel would be appointed and an extension provided as necessary to file an amended motion. Luleff v. State, 807 S.W.2d 495 (Mo. 1991) (en banc); Bradey v. State, 811 S.W.2d 379 (Mo. 1991) (en banc). In White II, the Missouri Supreme Court stated a new rule limiting the remedy for abandonment. The State of Missouri argues vigorously that this limit was implicit in, and correctly derived from, Missouri's prior precedents. The State's argument, however, is not determinative of the issue before us. Even though a rule appears in retrospect to form part of a consistent pattern of procedures, it should not be applied as a procedural default if the defendant could not be deemed to have been apprised of its existence. Ford v. Georgia, 498 U.S. at 423. The limitation on extensions announced in Mr. White's case is dependent upon the distinction, discussed above, between abandonment as to timeliness and abandonment as to content. For the reasons already discussed, we cannot say that Mr. White was fairly apprised of its existence. Accordingly, even if, as Missouri argues, this rule forms a consistent pattern with prior precedents, we could not apply it as a procedural default in this case.

As a second ground for limiting Mr. White's abandonment remedy, the Missouri Supreme Court held that Mr. White had waived any claim that he had been abandoned as to the content of the motions when he signed the "blank" verification. This waiver principle was, again, first announced in Mr. White's own case, White II. The Court based this principle on the fact that Mr. White knew or should have known he was an active participant in falsely verifying a document that had not yet been written. The Missouri Supreme Court was free to interpret its procedural rules in this way. Nevertheless, we do not see how, before the decision in Mr. White's own case, anyone could have known that signing this sort of open-ended verification constituted a waiver of remedies for abandonment.

-8-

To begin with, before White II, there was no Missouri precedent relating to the signing of "blank" verifications. Moreover, in White I, the Missouri Supreme Court itself suggested that the blame for the "blank" verification might fall on the second attorney who asked Mr. White to sign it; the Court remanded Mr. White's case to the Circuit Court for a determination of whether the attorney's actions in procuring the improper verification constituted abandonment. In the absence of any precedent, we do not see how Mr. White could have known the legal significance of the improper verification before the Missouri Supreme Court did. In sum, this principle was also neither readily ascertainable nor firmly established at the time of Mr. White's case.

Given the state of the law at the time, Mr. White did not have a fair opportunity to seek relief in this case. Mr. White was presented with a very difficult decision when his attorneys abandoned him: to lose all of his claims in an untimely motion or to sign an improper verification and hope that the motion would be at least timely. The new principles announced by the Missouri Supreme Court in his case were not available to guide him in making that decision. Because these principles were neither readily ascertainable nor firmly established, the procedural default that ensued cannot be considered an adequate state ground to bar federal review.

III.

Mr. White also appeals the District Court's denial of three claims that the District Court found were not procedurally defaulted. First, Mr. White argues that he received ineffective assistance of counsel on his direct appeal. At Mr. White's trial, the Court sustained the prosecutor's motion to strike for cause a venireman, Mr. Layson, over Mr. White's lawyers' objection. The Court had found that Mr. Layson had admitted his bias against the prosecutor; that he was a "loose cannon," likely to share extrajudicial knowledge with other jurors; and that he was a danger to both prosecutor and defendant. Mr. White's attorney failed to argue on direct appeal that Mr. Layson had been improperly removed. Mr. White contends that the trial judge's decision was

groundless because Mr. Layson showed no indication of bias. Mr. White concludes, therefore, that failure to raise this "sure" argument on appeal constituted ineffective assistance of counsel.

Largely for the reasons given by the District Court, we reject this argument. Absent contrary evidence, we must assume that Mr. White's appellate counsel failed to raise this claim for reasons of strategy. Roe v. Delo, 160 F.3d 416, 418 (8th Cir. 1998). There is no contrary evidence in this case. We cannot accept Mr. White's argument that Mr. Layson showed no indication of bias and that this would be a successful claim on appeal. According to the record, Mr. Layson indicated that he believed the prosecutor was lying because he failed to mention the possibility of conviction on a lesser offense. Mr. Layson then engaged in an involved disagreement with the trial judge and the prosecutor about the nature of the penalty phase of the trial. Under Missouri law, the trial court has "broad discretion to determine the qualifications of prospective jurors." State v. Parker, 886 S.W.2d 908, 919 (Mo. 1994) (en banc). There were no clear grounds in the record for challenging the trial court's discretionary determination that Mr. Layson was biased and a "loose cannon," dangerous to both the prosecutor and Mr. White. Mr. Layson's own words support that conclusion.

Second, Mr. White argues that he received ineffective assistance of trial counsel because of his attorneys' conflict of interest. At various points during the trial, Mr. White's attorneys asked him, before the court, to endorse or acknowledge certain decisions made with respect to his defense. Mr. White argues that his attorneys were motivated by a desire to protect themselves from ineffective-assistance-of-counsel claims, and that their questions revealed confidential and damaging trial strategies to the court and the prosecutor. Like the District Court, we cannot accept Mr. White's argument. Mr. White relies on Blanco v. Singletary, 943 F.2d 1477, 1500 (11th Cir. 1991). Unlike Blanco, however, where attorneys conceded to the court during the sentencing phase that there was no mitigating evidence for their client, Mr. White can

assert no prejudice here. It is true that Mr. White was asked questions to make sure that he understood his rights and that he acquiesced in certain strategic decisions. In doing so, however, no damaging admissions or revelations were communicated to the Court or the prosecutor. Asking such questions was not improper, but even if it had been, no relief would be appropriate, because no prejudice to Mr. White resulted.

Third, Mr. White argues that judicial bias deprived him of due process. Specifically, Mr. White maintains that the Missouri Circuit Court in considering his claims of abandonment had an ex parte communication with the prosecutor about the proper scope of an evidentiary hearing. Mr. White also claims that the Court adopted verbatim the prosecutor's proposed findings of fact and conclusions of law after this hearing. Even assuming that the Court did something improper, Mr. White cannot show any prejudice from this episode. The Missouri Supreme Court completely vacated the Circuit Court's decision on appeal and found abandonment. Any prejudice to Mr. White that might have occurred either from the conversation or by the verbatim adoption of findings was eliminated by the decision of the Missouri Supreme Court. Again, we affirm the decision of the District Court.

Accordingly, we reverse in part, affirm in part, and remand to the District Court for consideration of Mr. White's constitutional claims, except those claims that the District Court has already addressed on the merits.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-