# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-3044WM

_____

Leamon White,                               *
                                            *
        Appellant,                *
                                            *
                                            *  On Appeal from the United
    v.                           *  States District Court
                                            *  for the Western District
                                            *  of Missouri.
Al Luebbers,                                *
                                            *
        Appellee.                 *

_____

Submitted: September 10, 2002
Filed: October 11, 2002

_____

Before HANSEN, Chief Judge, RICHARD S. ARNOLD and LOKEN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

This is a petition for habeas corpus brought by Leamon White, a prisoner in state custody. Mr. White has been sentenced to death for first-degree murder. His case is now before us for the second time. On the prior appeal, White v. Bowersox, 206 F.3d 776 (8th Cir.), cert. denied, 121 S. Ct. 275 (2000), we remanded the case to the District Court "for consideration of Mr. White's constitutional claims, except those claims that the District Court has already addressed on the merits." 206 F.3d at 783.

On remand, there was disagreement about the meaning of this Court's directions. The principal issue addressed in our previous opinion was the Missouri doctrine of "abandonment," under which the omissions of an appointed post-conviction lawyer can be so serious that the lawyer is said to have "abandoned" the client, with the result, in most cases, that the client is allowed to proceed anew. The Missouri courts had held that Mr. White had been abandoned by his appointed post-conviction lawyer, but had limited the remedy for this default. Our major holding was that the remedy should not have been limited, and that the procedural bar asserted by the State (the state courts' limitation of the remedy for abandonment) was not adequate to prevent federal habeas corpus review on the merits. On remand, the State took the position that only those claims contained in Mr. White's second amended state-court post-conviction motion were open for review on federal habeas. The State argued that the rationale underlying our holding that the remedy for abandonment had been impermissibly limited went only that far, and that it did not extend to opening up for federal habeas merits review other constitutional claims asserted by Mr. White. Petitioner, on the other hand, argued that our previous opinion should be applied as written, that all of his constitutional claims "except those claims that the District Court ha[d] already addressed on the merits," 206 F.3d at 783, should be decided by the District Court without regard to procedural default arguments asserted by the State.

The District Court agreed with the State on this point. It observed that a number of petitioner's claims had not been raised in his second amended post-conviction motion in the state courts, and that those claims appeared to be defaulted even if the claims raised in the second amended motion were now open for review. The Court observed further that our previous opinion had been "limited to consideration of a single argument regarding procedural default." Leamon White v. Al Luebbers, No. 97-1663-CV-W-3, slip op. 3 (W.D. Mo., opinion filed April 3, 2001). Accordingly, the District Court proceeded to decide the merits of only those claims that had been raised in petitioner's second amended motion. As to the other

claims urged by petitioner, it adhered to its holding, made in the previous stage of the case, that these claims were procedurally barred for reasons unrelated to the abandonment doctrine.

The major issue before us on this, the second appeal, is the scope of our remand. The District Court and both parties agree that that Court was bound to proceed in accordance with our directions, but they disagree as to what these directions were. It is now our job to decide the legal effect of our previous opinion. That this question has arisen at all is due, at least in part, to some lack of clarity in our previous opinion, and the writer of this opinion (who also wrote the first one) acknowledges this responsibility.

On full consideration, we now hold that the terms of remand embodied in the previous opinion require the District Court to consider, on their merits, all federal constitutional claims that have not previously been decided on the merits, with a limited exception to be described later in this opinion. As to those claims that the District Court did decide on the merits after the remand following our previous opinion, we affirm. The judgment of the District Court will be affirmed in part, reversed in part, and the cause remanded for further proceedings to be set out at the end of this opinion.

I.

A description of the procedural context surrounding the first appeal will help us explain the conclusion we are reaching. In that case, petitioner raised a variety of constitutional claims. The State asserted that many of them were procedurally barred. The petitioner responded with two main arguments: that the state rules of procedure asserted as bars had not been applied regularly enough to constitute adequate and independent state grounds, and that, in any event, he had made, or could make, a showing of actual innocence, which would avoid the effect of any procedural bar.

The first of these two arguments, which we may call, for present purposes, "inadequate state grounds," itself had two parts: that the state rule requiring fact pleading in post-conviction motions had been applied too strictly, or in an unexpected way, to some of the claims asserted in petitioner's first amended post-conviction motion; and that the state courts' limitation of the remedy for abandonment was unexpected and could not have been anticipated beforehand. (Thus, this limitation of the remedy could not be said to have been regularly applied, a requirement of the adequate-state-ground doctrine.)

As our study of the case went forward following the argument, it began to seem that this last point, which can be referred to in shorthand as the abandonment point, would go in petitioner's favor. There were many claims and several arguments for avoiding procedural bars, and we were uncertain whether all of the issues would need to be addressed. We thought it prudent, therefore, to consult counsel for both sides. On December 23, 1999, the following order was entered:

> As we understand the case, appellant makes two basic arguments for avoidance of a procedural bar: inadequate state ground and actual innocence. If the Court decides that either one of these arguments is well taken, is there any reason why it would need to address the other one? Are there any issues the merits of which would be opened up, so to speak, by holding in favor of appellant on the question of actual innocence, but not by a holding in favor of appellant on the issue of adequate state ground?

As indicated, at the time this order was entered, we thought of the phrase "inadequate state grounds" as a shorthand description of two distinct but related procedural-bar issues: inadequate pleading and abandonment. We thought of these issues as interrelated, in the sense that, if the abandonment issue went in petitioner's favor, all claims pleaded in the second amended motion, which itself had incorporated both the

-4-

original motion and the first amended motion, would be open for review. Thus, it would not be necessary separately to decide the pleading issue, which concerned only the first amended motion. This view is reflected in the opinion we ultimately filed. There, we said:

> The predominant issue on appeal is whether the procedural rule barring the second motion [the limitation on the remedy for abandonment] was an adequate state ground. This issue is practically determinative of Mr. White's habeas petition because almost all of the claims raised in the first motion, which was hastily drafted, were procedurally defaulted due to inadequate fact pleading.

White v. Bowersox, 206 F.3d at 778.

Looking back, it now appears that this view, that overcoming of the procedural rule barring the second amended motion, would be determinative of the case, may have been mistaken.[1] Take, for example, a claim asserted in the second amended motion, but only through incorporation of the first amended motion by reference. A holding that the second amended motion was not barred by a procedural default would open up the claims made in that motion, but if one of those claims was itself subject to a separate procedural infirmity, inadequate fact pleading, it is at least arguable that that separate difficulty should have been addressed. This, however, is not what we did. Footnote 4 of our opinion clearly so indicates:

---

[1]Our first opinion is the law of the case. As such, both the District Court and this Court are obliged to follow it in later proceedings unless we determine that the first opinion was clearly erroneous and worked a manifest injustice. United States v. Palmer, 297 F.3d 760, 766 (8th Cir. 2002). The State does not suggest that either of these conditions exists in the present case, nor do we believe that they do.

Our holding that consideration of the second amended petition was not barred by an adequate state procedural ground makes it unnecessary to consider the adequacy of the state pleading rules held to bar most of the claims in the first amended petition. We likewise need not consider petitioner's assertion that his actual innocence excuses any procedural default.

Id. at 780 n.4.

We resume the narrative of the procedural history of the case. In response to our order of December 23, 1999, the pertinent parts of which have already been quoted, the parties gave us their views and supplemental briefs. The petitioner said:

If the Court decides in Mr. White's favor on the basis of the inadequate state ground issue or the related cause and prejudice issues, it need not reach his actual innocence argument. . . . The reason for this is that all of these arguments are separate mechanisms for avoiding procedural default. . . . If the Court finds one mechanism lifts the procedural bar, it need not address the others.

Supplemental Answer and Brief of Appellant 24.

The State's response was not identical, but it was similar:

A determination that the State's procedural rule upon which petitioner's numerous grounds for relief were defaulted — i.e., the pleading requirements under Rule 29.15(b, g) — was not independent and adequate, would not require a determination on petitioner's actual innocence claim because those claims previously deemed

> procedurally defaulted would be subject to review on the merits.

Supplemental Brief of Respondent 23. This response did not expressly refer to the abandonment issue, but only to pleading requirements. We understood it to mean, however, that the abandonment issue, if decided in petitioner's favor, would, in the view of the State, make determination of other procedural-bar questions unnecessary, because it was the lawyer who drafted petitioner's first amended motion who was later held to have abandoned him. 206 F.3d at 781. Even if the pleading in that motion were inadequate, therefore, it should not be held against petitioner, in our view.

All of this is by way of explaining what went on between our Court and the parties before the filing of our first opinion. When that opinion was filed, its conclusion, where one would normally look for a description of directions to be followed on remand, read as follows:

> Accordingly, we reverse in part, affirm in part, and remand to the District Court for consideration of Mr. White's constitutional claims, except those claims that the District Court has already addressed on the merits.

206 F.3d at 783. The same statement, though made in somewhat different words, appears at the beginning of the opinion:

> We reverse and remand for further proceedings on the merits of those claims the District Court held to be procedurally barred.

Id. at 778. We think the purport of these expressions, especially when considered against the procedural history of the case, described earlier in this opinion, is plain. The District Court was to consider, on remand, all claims on their merits, except those claims that had previously been so considered. Our conclusion in this regard is strengthened by the fact that the State, both in its petition for rehearing and rehearing en banc in this Court, and in its petition for certiorari filed with the Supreme Court, adopted this interpretation of our directions. We now hold that the District Court, on remand from this second appeal, should proceed accordingly.[2]

## II.

On remand from our first opinion, the District Court did reach the merits of three claims. We now turn to a discussion of these claims.

1.      Mr. White first argues that he was deprived of the effective assistance of trial counsel during voir dire. Counsel, he says, deliberately failed to ask potential jurors any questions relating to the death penalty. He did not ask, for example, if there were jurors who would automatically impose the death penalty after a finding

---

[2]There is a group of claims that need not be considered further, however. These claims, lumped together by the parties under the label of "trial error," relate to events occurring at the trial in the state courts, and represent, in each case, points that were either not preserved at the trial, or were not included in petitioner's direct appeal to the Supreme Court of Missouri. At the oral argument in the present appeal, counsel for petitioner agreed that these claims did not need to be considered on their merits. An example of such a claim appears to be claim RR, based on the theory that Mr. White's federal rights were violated when he was not present at a post-trial hearing about one of the jurors who had failed to reveal that a relative of his had been an acquaintance of one of the victims. This claim was not raised on direct appeal nor in the post-conviction proceedings. The District Court held that the claim was procedurally barred (J. A. 1505, 1861). We do not understand petitioner to disagree with this holding.

of guilt of first-degree murder.  Nor did counsel attempt to rehabilitate jurors who had reservations about the death penalty.  In addition, petitioner argues, counsel failed to ask potential jurors about certain issues that were going to arise in the case, such as eye-witness identification, graphic photographic evidence, and children as witnesses.  Voir dire is an essential part of any trial, petitioner argues, and here his lawyer was guilty of total default, a decision not to participate in voir dire at all, at least so far as questions pertaining to the death penalty were concerned.

We are urged to hold that this failure on the part of counsel was so serious that prejudice can be presumed.  The normal rule, of course, is that, in order to establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below what can normally be expected of a professional defender; and (2) that this defective performance caused prejudice.  The term "prejudice," in turn, is defined as a reasonable probability that the outcome of the trial would have been different, and this formulation is further refined by the statement that such a reasonable probability is shown if the reviewing court, after surveying the entire record, lacks confidence in the outcome.  See Strickland v. Washington, 466 U.S. 668 (1984).

We assume for present purposes that counsel's performance was seriously deficient.  The lawyer states that his failure to participate in voir dire was deliberate and conscious, and that he chose not to do so because he wished to avoid focusing potential jurors' attention on the fact that this was a death-penalty case.  If this was a strategic decision, it was also an unreasonable one.  The decision left the field entirely to the State.  The State was free, for example, to "rehabilitate" a potential juror who had appeared, in his initial answers to questions, to believe that the death penalty should automatically be imposed.  The State might, for example, get such a juror to agree that, despite his initial statement, he could and would apply fairly the court's instructions, and would impose the death penalty, if at all, only in accordance with those instructions.  The process might also work the other way.  That is, a juror

might initially indicate doubts about the death penalty, a circumstance which might justify a challenge for cause on the part of the State. In this situation, defense counsel would normally ask further questions to reason with the juror about his expressed doubts, and try to get the juror to say that, despite any policy or emotional preferences he might have, he would apply the law fairly and impartially as given by the court in its instructions. We see no way to justify a failure on the part of defense counsel to participate in this process at all. Such a strategy did not avoid focus on the death penalty; instead, it left the State entirely free to define this focus in its own terms.

Petitioner does not contend that Strickland prejudice in the normal sense can be shown here. Suppose counsel had followed a proper strategy and questioned the jurors thoroughly about the death penalty and other matters. We have no idea what their answers would have been. We have no idea what rulings the trial court would have made, for example, on challenges for cause, after hearing those answers. And we have no idea how the makeup of the jury would have been changed, if at all. If, for example, voir dire by defense counsel had succeeded in rehabilitating a potential juror, and a challenge for cause by the State had thereafter been overruled, the State might still have avoided that juror by exercising one of its peremptory challenges. In short, we do not know that any person who got on the jury was prejudiced against the defendant or in favor of the death penalty, and we do not know what difference in the composition of the jury additional voir dire would have made.

Petitioner argues, however, that prejudice should be presumed. The Supreme Court has recently recognized and restated this exception to the general rule of Strickland:

> We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is

> unreliable is so high that a case-by-case inquiry is unnecessary. But only in "circumstances of that magnitude" do we forego individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict.

Mickens v. Taylor, 122 S. Ct. 1237, 1240-41 (2002) (internal citations omitted). The principal authority usually cited in support of this exception is United States v. Cronic, 466 U.S. 648 (1984). In our view, the exception does not apply here. Cf. Bell v. Cone, 122 S. Ct. 1843, 1851-52 (2002) (applying Strickland prejudice requirement where attorney did not offer mitigating factors and waived closing argument at penalty phase). Counsel was not denied entirely, nor was the assistance of counsel denied entirely during a critical stage of the proceeding. We agree that voir dire is a critical stage, but petitioner did have counsel, and counsel proceeded on the basis of his own professional judgment, even though misguided. More importantly, we do not believe that the likelihood of prejudice is inherently so great in the present situation as to justify dispensing with the usual requirement that prejudice must be shown. Mr. White points out that his lawyer failed to ask a single question of twenty-four potential jurors who were removed for cause because they had expressed reservations about the death penalty. There is simply no way of gauging the likelihood that some of those jurors would have served on the actual trial jury if voir dire questions had been asked, nor is there any way of showing that the jurors who did actually serve were not completely fair. The Supreme Court has applied the presumption-of-prejudice exception to Strickland in very few cases, most of them apparently involving active representation of conflicting interests. Mickens, supra, 122 S. Ct. at 1241. This is not such a case, nor, in our opinion, is there any similar reason for presuming prejudice. Accordingly, we affirm the District Court's disposition of this point on its merits.

-11-

2.       Petitioner argues that his lawyer was guilty of ineffective assistance of counsel because he did not request the removal of juror Tuggle. This juror, petitioner asserts, was guilty of misconduct. It is said that other members of the jury had expressed concerns that Ms. Tuggle was not paying attention, and doubts whether she was in full possession of her faculties. A bailiff also reported that Ms. Tuggle did not seem able to follow the Court's instructions that she should not watch television news. The bailiff further reported that Ms. Tuggle expressed a desire to hurry the deliberations, and that she had discussed various matters with the jurors, including her opinion that Ted Bundy got what he deserved.

We agree completely with the District Court's disposition of this claim. The bailiff did not actually report that the juror had watched the news, and the fact that she had formed and communicated an opinion about one of the most notorious mass murderers in the country is not grounds for removal. She was discussing the case with her colleagues before final instructions were read, which was not proper, but we agree with the District Court's comments on this particular issue:

> Although she was discussing the case before final instructions were read, the Court does not believe this would have required her removal. A discussion of the case with fellow jurors after the evidence is in is the sort of "minor misconduct" that a trial court would have the discretion to decide does not warrant removal.

District Court opinion at 8. It is significant, in addition, that petitioner himself, when asked by his trial lawyer, said he wanted Ms. Tuggle to remain on the jury. If the lawyer, contrary to his client's desires, had moved to remove Ms. Tuggle, we have no reason to suppose that the motion would have been granted, or that denying it would have been error. We affirm the District Court's denial of this claim on the merits.

3.  Petitioner argues that he received ineffective assistance of trial counsel because counsel failed to object to the prosecutor's allegedly improper closing argument during the penalty phase. The District Court's opinion fully discusses six particular respects in which petitioner claims the State's penalty-phase closing argument was fundamentally unfair. We have little to add to that opinion, which is comprehensive and well reasoned. District Court opinion 17-20. Take, for example, the prosecutor's argument that the jurors should impose the death penalty so that society would have retribution. There is nothing improper about this argument. The desire for retribution, while not perhaps always a commendable motivation, is a legitimate purpose of the criminal law. A prosecutor requesting the death penalty quite naturally believes that this purpose will not be accomplished if the death penalty is not imposed. There is nothing wrong with telling the jury this. The jury of course does not have to be persuaded. That is entirely its own business. We affirm on its merits the District Court's determination with respect to the conduct of trial counsel in choosing not to object to the six specific instances of allegedly improper closing argument that the District Court reached on their merits.

## III.

Finally, petitioner asks that, if there is to be a remand, we direct the assignment of this case to another judge of the District Court. This argument is based upon a preliminary order of the District Court entered after our remand. The order stated that the Court had reached a "preliminary view" as to the meaning of our mandate. This preliminary view was consistent with the view ultimately taken by the District Court, that is, that our opinion on the first appeal opened up for consideration on the merits on remand only those issues asserted in the second amended post-conviction motion. The Court's preliminary order invited the parties to express their views on the matter, in light of the Court's stated initial inclination.

Petitioner argues that the order created an "impression," Brief for Appellant 81, "that the Court had prejudged the issue of the mandate's scope . . .." We disagree. People often make up their minds by degrees, and judges are no exception to this rule. There is nothing improper about a judge's sharing his or her tentative impressions or inclinations with the parties in advance of reaching a final decision. In fact, there are situations in which this can be a helpful procedure. It gives counsel on both sides a target to shoot at, so to speak, and alerts them as to the issues that they need to be addressing. In oral argument in this Court, for example, one of the judges on the panel, having read the briefs, may very well say to counsel for one side or the other that he or she had a certain tentative view of a question immediately before entering the courtroom, and may then invite counsel to inform the judge why this tentative view is wrong. Such a practice does not indicate bias at all. It simply shares with the lawyers the judge's state of mind at some point between initially picking up the briefs and coming to a final conclusion, which will occur, at the earliest, only after the oral argument and the conference.

The Supreme Court's opinion in Liteky v. United States, 510 U.S. 540 (1994), is dispositive of this point. So long as the court's expressed views come from the record of the case itself, or from representations properly made by the parties or their lawyers, nothing improper has occurred. "Not *all* unfavorable disposition towards an individual (or his case) is properly described by [the] terms" bias or prejudice. Id. at 550 (emphasis in original).

> Also not subject to deprecatory characterization as "bias" or "prejudice" are opinions held by judges as a result of what they learned in earlier proceedings. It has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant.

-14-

Id. at 551.  Nor was there anything so extreme or emotional about the District Court's order in this case that one would be justified in inferring personal bias or favoritism. In short, we find the case for assignment to a different judge unconvincing, and we decline to make such a direction.

## IV.

So much as the judgment of the District Court has rejected on their merits the three claims described in part II of this opinion is affirmed.  So much of that judgment as declined to reach other claims presented on grounds of procedural bar is reversed, and the case is remanded to the District Court with the following instructions:  to decide on their merits all claims alleged in the petition for writ of habeas corpus, not previously decided on their merits, except those claims falling within the group described in footnote two of this opinion.

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.