# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2772

_____

| | |
|---|---|
| Leamon White, | * |
| | * |
|     Petitioner - Appellee, | * |
| | *   Appeal from the United States |
|     v. | *   District Court for the |
| | *   Western District of Missouri. |
| Don Roper, | * |
| | * |
|     Respondent - Appellant. | * |

_____

Submitted: May 11, 2005
Filed: August 2, 2005

_____

Before LOKEN, Chief Judge, BEAM and MELLOY, Circuit Judges.

_____

LOKEN, Circuit Judge.

Leamon White was convicted of first-degree murder and sentenced to death by a Missouri state court in 1989. The Supreme Court of Missouri affirmed his conviction and sentence and the denial of state post-conviction relief. State v. White, 813 S.W.2d 862 (Mo. banc 1991), cert. denied, 502 U.S. 1103 (1992); State v. White, 873 S.W.2d 590 (Mo. banc 1994); White v. State, 939 S.W.2d 887 (Mo. banc), cert. denied, 522 U.S. 948 (1997). White then filed this petition for a federal writ of habeas corpus, which the district court denied. White appealed, and we held that certain constitutional issues were not procedurally barred from federal habeas review. White v. Bowersox, 206 F.3d 776 (8th Cir.), cert. denied, 531 U.S. 917 (2000). After

a second appeal, we concluded that the district court had misconstrued our prior remand order. We again remanded the case, directing the court "to decide on their merits all claims alleged in the petition for writ of habeas corpus, not previously decided on their merits." White v. Luebbers, 307 F.3d 722, 731 (8th Cir. 2002), cert. denied, 538 U.S. 981 (2003).

On remand, the district court[1] held an evidentiary hearing on the remaining claims. In a thorough opinion, the court granted the writ, concluding that White's trial counsel provided ineffective assistance in failing to investigate and present exculpatory testimony by two witnesses in the guilt phase, and in failing to present mitigating evidence in the penalty phase. The State of Missouri appeals only the guilt phase determination, conceding that White is entitled to penalty phase relief. On appeal, the State argues that White failed to demonstrate counsel's constitutionally deficient performance, and that the district court misapplied the prejudice standard of Strickland v. Washington, 466 U.S. 668 (1984). Because the Supreme Court of Missouri did not rule on the merits of this ineffective assistance claim after an evidentiary hearing, there is no state court ruling to which we must defer under 28 U.S.C. § 2254(d). After careful review of the record, we affirm.

**I.**

We briefly recite the facts critical to this appeal; additional background facts were detailed in our earlier opinions. In the early morning hours of January 6, 1987, three men went to the home of Don Wright and his girlfriend, Carol Kinney, to obtain crack cocaine. The trio murdered Wright and attempted to murder Kinney and a guest, Ernest Black. Kinney and Black survived and identified White as one of the three perpetrators at trial. The other two assailants were Roger Buckner, who was

---

[1] The HONORABLE ORTRIE D. SMITH, United States District Judge for the Western District of Missouri.

found guilty after a bench trial in which the death penalty was waived, and Cleveland Ford, who pleaded guilty to a non-capital offense. White's defense at trial was that Kinney and Black were mistaken in identifying White and that the third assailant was in fact a Jamaican drug trafficker named A.J. Constantine. Though other witnesses linked White to Buckner and Ford and tended to support the testimony of Kinney and Black, no physical evidence linked White to the crime scene.

Kinney's two young sons, Deonta and Raymond, were in the house at the time of the crime and saw the assailants. Both boys testified at Buckner's trial, which took place prior to White's trial. Both boys testified that one assailant spoke with a Jamaican accent and was known as "A.J." Deonta identified a picture of Constantine as A.J. Raymond could not identify the picture of Constantine as A.J. At White's trial, Raymond was called as a defense witness. He testified that White was not an assailant but again could not identify Constantine as the third killer. Deonta was not interviewed by trial counsel and did not testify. He would have testified that White was not an assailant *and* would have identified Constantine as the third killer.

Earlier on the night of the murder, the victims of the attack -- Wright, Carol Kinney, Black, Deonta, and Raymond -- were at the home of Dorothy Merrell and Carol's brother, Ben Kinney, who ran a crack house. In the district court's evidentiary hearing, Merrell testified that Buckner and a companion arrived looking for drugs while the others were there. Wright said he had drugs at his house and arranged to meet with Buckner at Wright's house later that night. Merrell testified that Buckner's companion was a Jamaican named Jay or A.J. Constantine. Similarly, Deonta told police after the attack that A.J. had been with Buckner at Merrell's house before the two came to Wright's house. Neither Deonta nor Mrs. Merrell knew White, and neither saw him on the night of the murder. Merrell was neither interviewed by defense counsel nor called as a witness at White's trial.

White's trial counsel, Robert Duncan, died in 1996, before the district court's evidentiary hearing. Second chair John O'Connor and Duncan's son, the defense investigator, both testified at the hearing. The district court concluded that counsel failed to conduct an adequate investigation because Duncan did not interview Deonta Kinney and Dorothy Merrell, did not attend Buckner's trial, and did not have copies of the boys' deposition transcripts from Buckner's case until the eve of trial. Lacking this important exculpatory information, counsel failed to call these two witnesses, who would have directly supported the defense theory of mistaken identification:

> Deonta's testimony directly implicated Constantine and exculpated [White]. Deonta's identity was known to counsel, a reasonable investigation would have revealed his identification of Constantine as the man who entered with Buckner, and no plausible explanation has been offered as to why Deonta could not or should not have been called.
>
> Coupled with this failure is the failure to call Dorothy Merrell ("Dorothy") to testify. . . . Dorothy identified Constantine's picture as a person she knew as a Jamaican drug dealer who went by the name "Jay" or "A.J." . . . Her testimony places Buckner and Constantine together shortly before the crime, and describes circumstances that led to Buckner's and Constantine's departure to Wright's house. Dorothy's potential for having information was known to counsel . . . .

White v. Roper, No. 97-1663, slip op. at 15-16 (W.D. Mo. June 14, 2004). The district court concluded that, by failing to investigate and call these two critical witnesses, "trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence," and this deficient performance prejudiced White's defense. Nave v. Delo, 62 F.3d 1024, 1035 (8th Cir. 1995) (quotation omitted), cert. denied, 517 U.S. 1214 (1996).

On appeal, the State argues that the district court's decision is contrary to the principle that trial counsel's failure to call witnesses, in this case Deonta Kinney and

-4-

Dorothy Merrell, is presumed to be reasonable trial strategy. See Fretwell v. Norris, 133 F.3d 621, 627 (8th Cir.), and cases cited, cert. denied, 525 U.S. 846 (1998). The principle is certainly sound, but we disagree that it applies in this case. The strength of the presumption turns on the adequacy of counsel's investigation:

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

Strickland, 466 U.S. at 690-91. Here, the record establishes that counsel's investigation was too superficial to reveal the comparative strength of Raymond's and Deonta's support for the defense of mistaken identification, and to discover the powerful support that Dorothy Merrell could provide for the defense that Constantine was the third assailant. In these circumstances, the district court properly found it inexplicable that only the boy with the weaker supporting testimony was called, rather than both, and properly found no apparent justification for failing to call Merrell. In other words, the presumption of sound trial strategy founders in this case on the rocks of ignorance, as in Wiggins v. Smith, 539 U.S. 510, 527-28 (2003).

## II.

The State further contends that the district court misapplied Strickland's prejudice standard in concluding: "Ultimately, the Court is not confident in the jury's verdict and believes there is a reasonable *possibility* that the outcome would have been different had Deonta and Dorothy testified." White v. Roper, slip. op. at 16 (emphasis added). The State properly notes that the Strickland prejudice standard requires proof of a reasonable *probability* and argues that the difference in terminology is significant enough to constitute reversible error.

-5-

Initially, we note that the district court, just three pages earlier in its 46-page opinion, stated the correct "reasonable probability" standard three times and quoted the Supreme Court's summary of that standard, "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Wiggins, 539 U.S. at 534, quoting Strickland, 466 U.S. at 694. The district court recognized Strickland as the governing authority and framed its analysis accordingly. The court focused on the ultimate Strickland prejudice inquiry when it concluded, taking into account the omitted testimony of Deonta Kinney and Dorothy Merrell, that it was "not confident in the jury's verdict." Thus, despite one mistake in the court's opinion, we are satisfied that it knew and correctly applied the familiar Strickland prejudice standard.

In resolving a similar issue in Woodford v. Visciotti, 537 U.S. 19, 23-24 (2002), the Supreme Court observed:

> The California Supreme Court's opinion painstakingly describes the *Strickland* standard. Its occasional shorthand reference to that standard by use of the term "probable" without the modifier may perhaps be imprecise, but if so it can no more be considered a repudiation of the standard than can this Court's own occasional indulgence in the same imprecision.

Although the district court in this case used the wrong word, rather than an imprecise shorthand, like the Supreme Court in Woodford we conclude that the district court's single mistake in articulating the Strickland prejudice standard was not a repudiation of that standard. Therefore, on this record, we affirm the court's conclusion that White is entitled to guilt phase habeas relief under Strickland because he proved that he was prejudiced by counsel's deficient performance.

The judgment of the district court is affirmed.

_____

-6-