WR-83,375-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/17/2015 3:59:57 PM
Accepted 11/17/2015 4:11:03 PM
ABEL ACOSTA
CLERK

NO. WR-83,375-01
WRIT NO. 4762-A

| | | |
|---|---|---|
| EX PARTE | § | IN THE TEXAS |
| | § | |
| | § | COURT OF |
| | § | |
| | § | |
| SHELTON MONTGOMERY | § | CRIMINAL APPEALS |

### OBJECTIONS TO THE DISTRICT COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

COMES NOW Shelton Wade Montgomery, Applicant, and files these objections to the district court's order recommending relief be denied, filed August 31, 2015. In support thereof, Montgomery would show the following:

### I. Not all decisions are strategic

In rejecting Montgomery's application for a writ of habeas corpus, in which he alleged his trial attorney rendered ineffective assistance of by not presenting available character and expert testimony, the district court simply adopted trial counsel's affirmation that those failures were in fact strategy decisions. To be sure, there is a strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689). The Supreme Court has made clear that "strategic choices made after thorough investigation of

1

law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-91. But when choices are made after less than complete investigation, they are reasonable only "to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. And decisions made out of inattention are not strategic and afforded no deference at all. *See Wiggins v. Smith*, 539 U.S. 510, 526 (2003) ("The record of the actual sentencing proceedings underscores the unreasonableness of counsel's conduct by suggesting that their failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment."); *Kimmelman v. Morrison*, 477 U.S. 365, 385-86 (1986) (decision based on "mistaken beliefs" was not based on "strategic considerations"); *Rompilla v. Beard*, 545 U.S. 374 (2005) (defense counsel's failure to examine state's file on defendant's prior convictions "was the result of inattention, not reasoned strategic judgment"). Justice Stevens, dissenting in *Wood*, summarized the principle:

> A decision cannot be fairly characterized as "strategic" unless it is a conscious choice between two legitimate and rational alternatives. It must be borne of deliberation and not happenstance, inattention, or neglect. Moreover, a cursory investigation does not automatically justify a tactical decision with respect to sentencing strategy. Although we afford deference to counsel's strategic decisions, for this deference to apply there

2

must be some evidence that the decision was just that: strategic.

*Id.* at 307-08 (Stevens, J., dissenting) (internal quotations and citations omitted).

That was the crucial issue in this case. Not whether Montgomery's counsel's decision not to present available character and expert testimony "itself was a reasonable exercise of professional judgment under *Strickland*"—that "is a different question." *Id.* at 304. Instead, whether counsel made a strategic decision at all.

The Supreme Court's fullest examination of that issue was in *Wiggins*. In that case, Wiggins argued in Maryland state court "that his attorneys' failure to investigate his background and present mitigating evidence of his unfortunate life history at his capital sentencing proceedings violated his Sixth Amendment right to counsel." *Wiggins*, 539 U.S. at 514. The Maryland Court of Appeals affirmed the trial court's denial of relief, though, "concluding that trial counsel had made 'a deliberate, tactical decision to concentrate their effort at convincing the jury' that appellant was not directly responsible for the murder." *Id.* at 518. Upon granting certiorari, the Court noted that in that case, like in *Strickland*, counsel "attempt[ed] to justify their limited investigation as reflecting a

tactical judgment." *Id* at 521. Pointing to *Strickland* and *Williams v. Taylor*, 529 U.S. 362 (2000), the Court then determined that its "principal concern in deciding whether [the attorneys] exercised reasonable professional judgment [was] not whether [they] should have presented a mitigation case." *Wiggins*, 539 U.S. at 522-23. And understandably so—"[t]o avoid the inevitable temptation to evaluate a lawyer's performance through the distorting lens of hindsight, *Strickland* establishes a deferential presumption that strategic judgments made by defense counsel are reasonable." *Mosley v. Atchison*, 689 F.3d 838, 848 (7th Cir. 2012) (citing *Strickland*, 466 U.S. at 690–91). "Rather, [the Court] focus[ed] on whether the investigation *supporting* counsel's decision not to introduce mitigating evidence of Wiggins' background was itself reasonable." *Wiggins*, 539 U.S. at 523 (emphasis added).

As to that question, "*Strickland* does not establish that a cursory investigation automatically justifies a tactical decision with respect to sentencing strategy. Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy." *Id.* at 527 (citing *Strickland*, 466 U.S., at 691). In making such an assessment, the court was required to "conduct an objective review of their performance,

4

measured for 'reasonableness under prevailing professional norms, which includes a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective at the time.'" *Id.* at 523 (citing *Strickland*, 466 U.S. at 689). The Supreme Court then concluded that counsel's investigation was unreasonably incomplete due to counsel's "inattention," and that, accordingly, their decision not to present a mitigation case was not "strategic" and thus owed no deference. *Id.* at 524-26. And the Court held that the Maryland Court of Appeals's failure to examine as much—instead "merely assum[ing] that the investigation was adequate"—was "objectively unreasonable." *Id.* at 527-28. "As a result, the [Maryland] court's subsequent deference to counsel's strategic decision… despite the fact that counsel based this alleged choice on what we have made clear was an unreasonable investigation, was also objectively reasonable." *Id.* at 528 (citing *Strickland*, 466 U.S. at 690-91 ("strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.")).

In light of the Supreme Court's pronouncements, seemingly every federal court to consider the question has, unsurprisingly, recognized

that a "strategic decision" is only as sound as the factual basis upon which it is made. *See, e.g.*, *Pavel v. Hollins*, 261 F.3d 210, 218 (2nd Cir. 2001) (where a habeas petitioner establishes that counsel's choices were not the result of a "conscious, reasonably informed decision made by an attorney with an eye to benefitting his client," courts may question such choices); *Moore v. Johnson*, 194 F.3d 586, 610 (5th Cir. 1999) (holding that a particular decision could not be labeled "strategic" where, inter alia, the attorney had "no idea" why the decision had been taken); *Loyd v. Whitley*, 977 F.2d 149, 158 & n. 22 (5th Cir. 1992) (distinguishing between "strategic judgment calls" and "plain omissions"); *United States v. Gray*, 878 F.2d 702, 712 (3d Cir. 1989) ("counsel's behavior was not colorably based on tactical considerations but merely upon a lack of diligence"); *Smith v. Stewart*, 189 F.3d 1004, 1010 (9th Cir. 1999) (holding that an attorney's decision not to pursue certain evidence was not "strategic" where, inter alia, it was based on a lack of understanding of what constituted such evidence); *Williams v. Washington*, 59 F.3d 673, 680 (7th Cir. 1995) ("[b]ecause of his ignorance, counsel was… unable… to make any strategic decision[ ]"); *Battenfield v. Gibson*, 236 F.3d 1215, 1229 (10th Cir.

2001) ("counsel made no strategic decision at all because [he] was ignorant of various other... strategies he could have employed."); *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005) ("presumption of sound trial strategy... founders on the rocks of ignorance"); *United States v. Burroughs*, 613 F.3d 233, 238 (D.C. Cir. 2010) (if their failure to seek funding under the CJA "reflected ignorance of the law, rather than a reasonable strategic decision... then the [attorneys'] performance must be deemed deficient."); *Bean v. Calderon*, 163 F.3d 1073, 1079 (9th Cir. 1998) (noting that a decision cannot be characterized as "strategic" where it was a result only of "confusion"). Texas courts, too, have recognized that ignorance provides no basis upon which to make a strategic decision. *See, e.g., Ex Parte Briggs*, 187 S.W.3d 458, 467 (Tex. Crim. App. 2005) (where counsel's decision not to fully investigate or consult with experts was due to the appellant's failure to pay an additional fee, counsel's "was not a 'strategic' decision"); *Wright v. State*, 223 S.W.3d 36, 42-43 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (trial counsel was ineffective in deciding not to retain an expert because he "had no legitimate strategy" in doing so in light of his "ignorance of the literature" indicating "an expert might be of assistance"); *Ex parte Bowman*, 01-13-01045-CR, 2014 WL 2535326

(Tex. App.—Houston [1st] 2014) (trial counsel's defensive strategy was not owed deference where it "was not informed by a reasonable investigation"). In Montgomery's case, though, the district court rejected his application for writ of habeas corpus simply because his counsel characterized his failure as a strategic decision. The court blindly accepted counsel's "strategic decision" without any examination of the basis upon which it was made.

Indeed, this case is much like *Wiggins*. In that case, like this one (and *Strickland*), counsel contended that their complained-of decision was a matter of trial strategy. *Wiggins*, 539 U.S. at 517. The Supreme Court examined that contention, though, and determined that counsel's decision not to present a mitigation case was not strategic at all, because they made it while unaware of the mitigation evidence available to them.

Montgomery's case is just the same. His counsel contended his failure to call additional witnesses at punishment was a strategic decision, while Montgomery contended his counsel made that decision while ignorant of what an expert might have testified. And yet here, the district court determined counsel's decision was due deference simply because he announced it was strategic. "The consequences of inattention rather than

8

reasoned strategic decisions are not entitled to the presumption of reasonableness." *Mosley*, 689 F.3d at 848 (citing *Rompilla*, 545 U.S. at 395–96; *Wiggins*, 539 U.S. at 533–34). The district court's blind acceptance of counsel's justification was wrong, and this Court should remand this case to that court to consider whether counsel's failure to investigate potential witnesses was reasonable.

## II. This Court should require the issue be resolved via a hearing, not on affidavits alone

It is inappropriate to resolve controverted facts without an evidentiary hearing where witnesses are subject to cross-examination. In *Ex parte Byars,* 176 S.W.3d 841 (Tex. Crim. App. 2005), Presiding Judge Keller noted that the most effective way of determining the reliability of witness testimony is through the "crucible of cross-examination." *Id.* at 842 (concurring opinion). Similarly, in *Charles v. State,* 146 S.W.3d 204 (Tex. Crim. App. 2004), this Court stated:

> Affidavits . . . are widely and appropriately used in criminal and civil proceedings to determine if there are material disputed facts and to define exactly which facts are disputed. They are not always well-suited for resolving disputed facts.

*Id.* at 210 (footnotes omitted).

Accordingly, in this case, upon remand the district should not decide whether counsel's failure was reasonable solely based on affidavits. This is an inappropriate way to make a credibility determination. *Gallego v. United States,* 174 F.3d 1196 (11th Cir. 1999), is particularly instructive on this issue. In *Gallego,* the court stated:

> It is perfectly legitimate for the district court to find, based on all the evidence in the record, that a defendant's testimony about his participation in a drug scheme is not credible. The magistrate judge here, however, based the decision on the fact that the defendant's allegations were unsubstantiated and incorrectly found as a matter of law that defendant could not carry his burden without presenting some evidence in addition to his own word, which is contrary to that of counsel's. The magistrate says nothing about the internal consistency of the defendant's testimony, or his candor or demeanor on the stand. Indeed, the magistrate does not even state simply why the defendant's lawyer is the more credible witness in this case. There is nothing in the report to indicate the magistrate weighed defendant's credibility. *Compare United States v. Camacho,* 49 F.3d 349 (11th Cir. 1994) (court made specific findings of fact after an evidentiary hearing regarding defendant's credibility), *cert. denied,* 514 U.S. 1090, 115 S.Ct. 1810, 131 L.Ed.2d 735 (1995). The fact that defendant's testimony is uncorroborated is not enough standing alone to support a credibility finding. Counsel's testimony was also unsubstantiated by other evidence.

> While we appreciate the concerns enunciated in *Underwood,* we cannot adopt a per se "credit counsel in case of conflict rule," which allows that in any case where the issue comes down to the "bare bones testimony" of the defendant against

the contradictory testimony of counsel, defendant is going to lose every time. We therefore remand for a new evidentiary hearing. Because of the intervening death of District Judge C. Clyde Atkins, the case will necessarily come before a different district judge. We suggest that in view of the nature of the case, if the matter is referred to a magistrate, it be sent to a different magistrate judge.

*Id.* at 1198-99.

Indeed, the federal courts have routinely favored live witness testimony. This is because an evidentiary hearing allows the trier of fact to observe the witnesses and judge their credibility. *See, Webster v. Offshore Food Service, Inc.*, 434 F.2d 1191, 1193 (5th Cir. 1970) (trier of fact is entitled to weigh the credibility of witnesses and value his testimony in light of his demeanor on the stand); *First National Bank v. Martin*, 963 F.2d 809, 814 (5th Cir. 1992) (bankruptcy judge had occasion to observe Martin and listen to his testimony, which necessarily includes the opportunity to study any changes in both his demeanor and tone of voice); *Port Arthur Towing Company v. John W. Towing, Inc.*, 42 F.3d 312, 318 (5th Cir. 1995) (witness' manner and demeanor on the witness stand weighed against credibility); *United States v. Thomas*, 12 F.3d 1350 (5th Cir. 1994) (appellate court must give due deference to the credibility determinations

of the district court who has the opportunity to observe the demeanor of the witnesses).

Valid judgments about credibility cannot be made from a review of a paper record alone. Thus, concurrent with a remand order, this Court should order a live evidentiary hearing. *See, e.g., Perillo v. Johnson*, 79 F.3d 441, 444 (5th Cir. 1996) (petitioner entitled to discovery when there is factual dispute which, if resolved in petitioner's favor, would entitle petitioner to relief, and the State has not afforded petitioner a full and fair evidentiary hearing).

## III.  Conclusion

In response to Montgomery's allegations that his trial attorney failed to render effective assistance of counsel by not presenting available character and expert testimony, the district court simply denied the writ without meaningful consideration. The court blindly accepted counsel's attestation that his failures were strategic. Because this analysis was incomplete, Montgomery objects to the district court's resulting recommendation and requests this Court to remand this case to that court to conduct a hearing on the issue of whether counsel's failure to investigate potential witnesses was reasonable.

## Prayer

WHEREFORE, PREMISES CONSIDERED, Applicant prays that this court will remand this case for a hearing wherein the live testimony of the witnesses may be presented.

Respectfully submitted,

/s/   Bruce E. Anton
BRUCE E. ANTON
State Bar No. 01274700

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road,   Suite 250
Dallas, Texas 75201
214-468-8100
214-468-8104 - fax

*Attorney for Applicant Montgomery*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Objections to Findings of Fact and Conclusions of Law was mailed United States Mail, Proper Postage Affixed, to Luke M. Inman, District Attorney, 100th Judicial District Attorney's Office, 800 West Avenue, Box 1, Wellington, Texas 79095 on November 17, 2015.

        /s/   Bruce E. Anton
        BRUCE E. ANTON

INMATE DECLARATION

I declare under penalty of perjury that the foregoing is true and correct.

**Paul Herrmann** did not ever discuss with me hiring any experts.

Shelton Montgomery

## INMATE DECLARATION

Paul Herrmann was employed on my behalf in February of 2011. My case was pending for one year. In that time I talked with Paul Herrmann at his office during the initial consultation, at his office when payment was made by my parents, at 3 of the 4 pre-trial appearances and at trial.

The only time I discussed my case with Paul Herrmann was during the consultation and when payment was made. I visisted Mr. Herrmanns' office roughly 5 to 6 other times and always talked with his legal assistant Vickie Summerall and once with his legal partner Walt Weaver.

All of my questions to Mr. Herrmann were asked through his legal assistant Vickie Summerall. Questions from Mr. Herrmann to me were asked through his legal assistant Vickie Summerall.

I never discussed hiring experts with Paul Herrmann. I did discuss hiring experts with Vickie Summerall. I told her that if experts were needed to get them. Money was not an problem since I had help with funding through my parents.

A few days before trial I was instructed by Vickie Summerall and and Walt Weaver, at Herrmann and Weaver Law Office, on what to wear and how to act during trial. I did not talk to Mr. Herrmann about this matter nor did he coach me for trial.

At trial Mr. Herrmann did not call me to testify on my behalf. However, he did call me to testify on my own behalf during the punishment phase. Both of these decisions were made at trial.

Mr. Herrmann did not discuss the punishment phase of the trial with me. Vickie Summerall said that Mr. Herrmann wanted to call my parents as character witnesses. This is all that was said to me about the punishment phase.

If I had known that I could have had character witnesses then I would have had some there. I have friends who could have and would have testified on my behalf. But this was not discussed with me.


_Shelton Montgomery_
Shelton Montgomery

Writ No. _____

| EX PARTE | § | IN THE 100TH JUDICIAL |
|---|---|---|
| | § | |
| | § | DISTRICT COURT OF |
| | § | |
| SHELTON MONTGOMERY | § | CARSON COUNTY, TEXAS |

## AFFIDAVIT

COMES NOW, Marguerite Montgomery and hereby gives the following statement under oath:

My name is Marguerite Montgomery. My address is P.O.Box 485 Chandler Oklahoma 74834 My phone number is 405-258-4142, and my email is marguerite600@hotmail.com .

"The only time my husband Ted, and I talked with Paul Herrmann was when we paid him his fee. We did not talk with him during nor regarding any trial preparation. We did not talk with him before, during, nor after the trial. We did not talk with him before, during, nor after the guilty phase. We did not talk to him about the appeal. His assistant, Vicki, sat with us while waiting for the verdict. His assistant, Vicki, told us 10 minutes before the punishment phase began that Ted and I would be called as witnesses. She told us to start thinking of good things to say about Shelton. There were no other witnesses present. We did not talk to the lawyer when we went to his office to pay for the appeal. We were greeted by Vicki and taken to her office to deliver our payment for the appeal.

As I write this I am reminded of how stupid/foolish I was at that time. Ted was very sick and not able to help with decisions. My only defense is that I had been Ted's sole caretaker for two years and his condition had been declining quickly ever since Shelton's indictment a year earlier. Ted died four months after Shelton's trial.

I have been living with regrets regarding my failure to recognize earlier how bad his first lawyers were."

Further affiant sayeth not.

_Marguerite Montgomery_
MARGUERITE MONTGOMERY

SUBSCRIBED AND SWORN TO BEFORE ME on this 26th day of
October                , 2015.

_Cheryl L. Raper_
NOTARY PUBLIC, IN AND FOR
STATE OF TEXAS

My commission expires: 9-3-2017

CHERYL L. RAPER
NOTARY
# 01012496
PUBLIC
STATE OF OKLAHOMA