United States Court of Appeals

FOR THE EIGHTH CIRCUIT


No. 95-4251EMSL

Ronnie L. Anderson,                 *
                                    *
        Appellant,                  *
                                    *   Appeal from the United States
            vs.                     *   District Court for the
                                    *   Eastern District of Missouri.
Michael Groose, et al.,             *
                                    *
        Appellees.                  *


        Appellant's petition for rehearing has been considered by the
Court and is granted.  The opinion and judgment of this court
entered on November 6, 1996, are vacated and the attached opinion
is being filed in its stead.


                            February 6, 1997


Order Entered at the Direction of the Court:


Clerk, U.S. Court of Appeals, Eighth Circuit.

_____

No. 95-4251
_____

Ronnie L. Anderson,               *
                                  *
          Appellant,              *
                                  *     Appeal from the United States
     v.                           *     District Court for the
                                  *     Eastern District of Missouri.
Michael Groose, Jeremiah W.       *
(Jay) Nixon,                      *
                                  *
          Appellees.              *
                    _____

          Submitted:  September 11, 1996

             Filed:  February 6, 1997
                    _____

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit
     Judge, and WOLLMAN, Circuit Judge.
                    _____

WOLLMAN, Circuit Judge.


     Ronnie Anderson appeals from the district court's[1] denial of
his 28 U.S.C. § 2254 petition for writ of habeas corpus.  He argues
that he received ineffective assistance of trial counsel and was
denied the right to present a defense under the Compulsory Process
Clause of the Constitution.  We affirm.


                              I.


     At about midnight on August 16, 1989, Alvin Smith, aged 17,
was shot and killed as he sat on the front porch of his home in
Pinelawn, Missouri.  Brenda Foster, who was standing approximately

_____

[1]The Honorable George F. Gunn, Jr., United States District
Judge for the Eastern District of Missouri, adopting the Report and
Recommendation of the Honorable Thomas C. Mummert, United States
Magistrate Judge for the Eastern District of Missouri.

one foot from Smith at the time of the shooting, witnessed the murder. Foster said she saw a man, whom she later positively identified as Anderson, walk to the front of Smith's house and stand six or seven feet away from Smith. She then saw Anderson pull a gun from his pocket and shoot Smith.

At about the same time, Ray Welch was walking to Smith's house to get money from him for pizza. Welch heard gunshots and a woman's scream. He then saw two men running towards him and flee into an alley. One of the men, whom Welch later identified as Anderson, was carrying a gun.

After Foster identified Anderson from police photos as the man she saw shoot Smith and Welch identified Anderson as the man he saw with a gun, the police went to the home of James Miller on the evening of August 17 looking for Anderson. Miller gave the police permission to enter his home. Anderson was found in the bathroom, hiding in a storage closet over the bathtub.

Anderson maintained that at the time of the shooting he was sitting alone on the front lawn of Miller's home. He gave trial counsel, Stormy White, the names of alibi witnesses who were across the street from Miller's home and could verify his alibi. Ms. White enlisted two investigators to help locate the potential alibi witnesses. When none were found, Ms. White, along with the two investigators and another attorney, went door to door on several occasions in an attempt to find alibi witnesses. Again, none were found. Ms. White drove to Royal Lake, Illinois, in an attempt to find Anderson's sister Deborah and James Miller, whom Anderson claimed he had been visiting on the night of the killing. Counsel was unable to find Deborah, although she was able to find Miller on her second trip to Royal Lake. (Counsel determined that Miller's testimony would not have provided an alibi and would in fact have been damaging to Anderson's defense.)

-2-

On the first day of trial, Anderson told Ms. White that a man named Brian Nunnally could verify his alibi. Ms. White contacted Nunnally, who said he was willing to testify on behalf of Anderson. Nunnally would have testified that he was with Anderson on the night of August 16 but that he could not be sure if he was with him at the time of the shooting.

When Ms. White sought to endorse Nunnally as an alibi witness, the State objected, claiming that such a late endorsement would be prejudicial and would be in violation of Missouri discovery rules. The court sustained the objection and denied Ms. White's request for leave to file the out-of-time endorsement.

Anderson was convicted of first degree murder and armed criminal action. He was sentenced as a prior, persistent offender to consecutive terms of life imprisonment without parole for first degree murder and to twenty-five years' imprisonment for armed criminal action. His motion for a new trial was denied.

Anderson filed a timely notice of appeal. He also filed a motion for post-conviction relief, which alleged both of the constitutional claims presented in this action. Pursuant to Missouri law, the direct appeal was held in abeyance until adjudication of the motion for post-conviction relief, which was ultimately denied.

Anderson appealed both his conviction and the denial of post-conviction relief in a consolidated appeal, claiming in part that the trial court abused its discretion in precluding him from calling Nunnally as an alibi witness. Both decisions were affirmed by the Missouri Court of Appeals in an unpublished opinion. Anderson's motion to recall the mandate was also denied. Anderson then filed this section 2254 petition.

Anderson contends that he was denied the effective assistance of trial counsel because of counsel's failure to adequately pursue alibi witnesses.  The district court concluded that this claim was procedurally barred, as it was not presented to the Missouri Court of Appeals in the consolidated appeal.

A claim that is presented to the state court on a motion for post-conviction relief is procedurally defaulted if it is not renewed in the appeal from the denial of post-conviction relief. Lowe-Bey v. Groose, 28 F.3d 816, 818 (8th Cir. 1994).  See also Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996) (a claim presented in a motion for post-conviction relief but not advanced on appeal is abandoned).

To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts.  Krimmel v. Hopkins, 56 F.3d 873, 875-76 (8th Cir. 1995), cert. denied, 116 S. Ct. 578 (1995).  The petitioner must present to the federal court the same factual arguments and legal theories that were presented to the state court.  Id. at 876.  In other words, the federal claim cannot contain "significant additional facts such that the claim was not fairly presented to the state court," but closely related claims containing an "arguable factual commonality" may be reviewed.  Kenley v. Armontrout, 937 F.2d 1298, 1302-03 (8th Cir. 1991) (citation omitted).

We have some question whether this claim was fairly presented on appeal in the state court.  There is merely one vague reference to a claim of ineffective assistance of counsel in Anderson's consolidated appeal.  Anderson alleged that by precluding Nunnally's testimony, "the [trial] court's rulings denied Appellant's rights . . . to the effective assistance of counsel."

-4-

This claim asserts that the trial court prevented trial counsel from being effective. The allegation in this action, on the other hand, is that trial counsel herself was ineffective. These are two distinct legal theories, with distinct factual arguments.

Giving Anderson the benefit of the doubt, however, we conclude there may be an "arguable factual commonality" between Anderson's ineffective assistance of counsel claim on appeal to the state court and his ineffective assistance claim in this action.

To succeed on an ineffective assistance of counsel claim, Anderson must show that Ms. White's performance was deficient and that the deficiency prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984).

This is not a situation in which counsel made no effort to contact alibi witnesses. See Grooms v. Solem, 923 F.2d 88, 90 (8th Cir. 1991) (it was unreasonable for counsel to not make *some* effort to contact alibi witnesses). Indeed, Anderson's brief to the Missouri Court of Appeals makes mention of Ms. White's "diligent efforts to locate witnesses on [Anderson's] behalf." As recounted above, when the two investigators that Ms. White hired were unsuccessful in their initial attempt to locate the witnesses, Ms. White, the two investigators, and another attorney renewed the effort to locate potential alibi witnesses. Given these numerous efforts to locate alibi witnesses, Ms. White's representation of Anderson cannot be said to have fallen "below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88. Accordingly, Anderson's claim of ineffective assistance of counsel is without merit.

## III.

Anderson also argues that the sanction imposed for violating a discovery rule--preclusion of his alibi witness's testimony--

violated the Compulsory Process Clause of the Sixth Amendment.  The district court concluded that because the discovery rules themselves were constitutional, any perceived error in precluding the alibi witness testimony was not of constitutional magnitude and therefore not cognizable on habeas review.

We disagree with the district court's conclusion that the discovery sanction was not of constitutional magnitude.  In Taylor v. Illinois, 484 U.S. 400, 407-09 (1988), the Supreme Court noted that although by its terms the Compulsory Process Clause confers only the right to compel witnesses to appear through use of subpoena power, the Clause has consistently been given a broader interpretation.  This broader interpretation necessarily encompasses the right to present witness testimony, for the right to compel a witness's presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness's testimony heard by the trier of fact. "The right to offer testimony is thus grounded in the Sixth Amendment even though it is not expressly described in so many words."  Id.

Thus, while the preclusion of alibi witness testimony can violate the Sixth Amendment, it does not invariably do so.  If the discovery violation was "willful and motivated by a desire to obtain a tactical advantage," it is "entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness' testimony."  Id. at 414-15.  See also Grooms, 923 F.2d at 91 (exclusion is appropriate if the delay was result of willfulness).

No court in this case has found, nor is there anything in the record to indicate, that trial counsel was willful in her noncompliance with the discovery rules.  There is no evidence tending to prove that either trial counsel or Anderson himself knew the name of the alibi witness before the morning of trial.  Thus,

the state trial court erred in excluding Nunnally's testimony.

A finding of a violation of the Constitution does not, without exception, mandate the grant of a writ, for a denial of Compulsory Process can constitute harmless error. See Wright v. Lockhart, 914 F.2d 1093, 1098 (8th Cir. 1990). After a careful review of the record, we conclude that the Compulsory Process violation was "harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967).

The state adduced strong evidence of Anderson's guilt. Brenda Foster, who was standing only one foot from the victim at the time of the murder, and six or seven feet from the perpetrator, testified that she saw a man, later identified by her as Anderson, pull a "long silver gun" from his pocket and then fire it at Smith. Foster testified that she heard another shot after that and thought she heard two more shots. She then saw Anderson running down Greer Street. Ray Welch also saw a man that he later identified as Anderson running down Greer Street and likewise saw him with a "shiny pistol." Moreover, on the day after the murder, Anderson was found hiding in a bathroom closet, not the expected abode of one who has had nothing to do with a recent killing.

Weighed against the state's evidence, Nunnally's testimony, even if believed, would have lacked exculpatory force. Nunnally would have testified only that he was with Anderson on the night of the murder, not that he was with Anderson at the exact time of the shooting. (We note that Nunnally failed to appear at Anderson's Rule 29.15 evidentiary hearing, notwithstanding the fact that he had been endorsed as a witness.)

Given the weight of the state's evidence and the weakness of the proposed alibi defense, we conclude that Nunnally's testimony would not have had any effect on the jury's verdict. Therefore, although the preclusion of Nunnally's testimony was error, the

error was harmless beyond a reasonable doubt.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.