# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-4381
No. 07-2015

_____

| | |
|---|---|
| Bruce Earl Ward, | * |
| | * |
| Appellant, | * |
| | *    Appeals from the United States |
| v. | *    District Court for the |
| | *    Eastern District of Arkansas. |
| Larry Norris, Director, Arkansas | * |
| Department of Correction, | * |
| | * |
| Appellee. | * |

_____

Submitted:   September 24, 2008
Filed:   August 24, 2009

_____

Before WOLLMAN, MELLOY, and GRUENDER, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Bruce Earl Ward was convicted of capital murder and sentenced to death. After exhausting his state court remedies, Ward petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, arguing, among other things, that he was denied his Sixth Amendment right to effective assistance of counsel at the guilt phase of his trial. The district court[1] denied his petition and granted a certificate of appealability to this court

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

to determine whether counsel was ineffective for failing to seek the recusal of the state court trial judge. While that appeal was pending, Ward's counsel moved for relief from the district court's judgment on the basis that Ward lacked capacity to proceed on his petition for writ of habeas corpus. The district court determined that the motion was a second or successive habeas petition under 28 U.S.C. § 2244 and concluded that it lacked jurisdiction to consider the motion. Ward's later motion to alter or amend judgment was also denied. The district court then certified the following issue for review: whether the district court erred in ruling that Ward's motion for relief from judgment and motion to alter or amend the judgment were second or successive petitions pursuant to 28 U.S.C. § 2244. The appeals have been consolidated, and we affirm.

## I.

On August 11, 1989, Ward murdered Rebecca Doss at the Jackpot Gas Station in Little Rock, Arkansas. Before trial, Ward was evaluated at the state hospital and diagnosed with antisocial personality disorder. The supervising forensic psychologist concluded that Ward was aware of the charges against him and that he was capable of cooperating effectively with an attorney in preparation of his defense. Ward's social history was not fully developed because Ward asked the state hospital to not contact his family. On January 18, 1990, the trial court held a competency hearing, at which the state doctors who had evaluated Ward testified. Both doctors opined that Ward was competent and able to stand trial. The trial court agreed and denied Ward's counsel's request for funding to pay for an independent evaluation.

Throughout the trial, the judge denied defense counsel's requests to make sidebar objections, but allowed the prosecution to do so. A jury convicted Ward of capital murder and found that he should be sentenced to death by lethal injection. Ward was sentenced to death on October 18, 1990, and he appealed his conviction and his sentence. A divided Arkansas Supreme Court narrowly affirmed his conviction,

but reversed the death sentence and remanded the case for a second sentencing trial. Ward v. Arkansas, 827 S.W.2d 110 (Ark. 1992); Ward v. Arkansas, 831 S.W.2d 100 (Ark. 1992) (dissent). Following that trial, Ward was again sentenced to death. Because the court reporter failed to accurately record the proceedings and failed to record a number of bench conferences, however, the record on appeal could not be settled. Ward v. Arkansas, 906 S.W.2d 685 (Ark. 1995) (per curiam). Accordingly, the case was remanded for a third sentencing trial.

Before the final sentencing trial, defense counsel moved to stay the proceedings and requested an inpatient mental health evaluation because Ward's mental condition "ha[d] deteriorated to the point that he can not or will not cooperate with present counsel." The motion listed several demands that Ward had made on the court, including a "full blanket presidential pardon" and an absolute expungement, a new Social Security number that could not be traced to his original number, a vehicle of his choosing, a valid driver's license, and $1 million for every year he had been incarcerated. The court granted the motion for a mental health evaluation, even though Ward claimed sanity throughout the pretrial hearing and stated that "I will not say a word, I will not comply." During the hearing, Ward repeatedly stated that he did not want a life sentence. Rather, if the charges against him were not dropped, he wanted to be executed.

On October 17, 1997, Ward was sent to the Arkansas State Hospital to be evaluated by a forensic evaluation team. According to the letter from the supervising forensic psychologist and the medical director, Ward told the team that he was competent, that he would not submit to the evaluation, and that he tried to remove his attorney's request for an evaluation.[2] Ward's evaluation was terminated, and the letter

---

[2]This is not the first time Ward refused to cooperate in a mental health evaluation. The court ordered an evaluation on March 6, 1996, and it appears that Ward met with the state doctors in September 1996. According to the October 6, 1997, hearing transcript, Ward refused to submit to that exam.

concluded that although Ward refused to cooperate with his evaluation, there was no indication that the uncooperativeness was due to any Axis I mental disorder.[3] This observation was based on the team's brief interaction with Ward. No documents were mentioned in the letter, and the evaluation team did not render an opinion based on the record. Defense counsel submitted the letter to the court immediately before trial and did not raise any further motions or objections regarding Ward's competency to stand trial. Following the third trial, a jury recommended the death sentence. Ward was sentenced to death on October 28, 1997, and the Arkansas Supreme Court affirmed. Ward v. Arkansas, 1 S.W.3d 1 (Ark. 1999).

Ward sought post-conviction relief under Rule 37.1 of the Arkansas Rules of Criminal Procedure, alleging a number of errors, including ineffective assistance of counsel for failing to seek the recusal of the judge who presided over the guilt phase of Ward's trial. Ward argued that the judge demonstrated partiality to the prosecution and was biased because he did not allow defense counsel to approach the bench to make objections, but did allow the state's attorney to approach. Specifically, Ward alleged:

> Trial counsel was ineffective by not seeking recusal of the trial judge or a mistrial when the trial judge demonstrated partiality to the prosecution. During the course of the trial the trial judge permitted the prosecution to have side bar conferences but refused to allow the defense to have side bar conferences thereby intentionally or unintentionally communicating judicial bias in the presence of the jury.

Ward's post-conviction hearing was held on June 30, 2000. Against his counsel's advice, Ward waived his right to be present at the hearing. The only witness called was Tom Devine, Ward's counsel for the guilt phase of the trial. With respect to failing to seek the recusal of the trial judge, Devine testified that the trial judge was

---

[3]Axis I disorders are clinical disorders including schizophrenia and other psychotic disorders.

not defense oriented and did not appreciate the importance of preserving the record for appeal. Devine did not, however, seek recusal or a mistrial on the basis of the trial judge's bias. Ward's counsel's questions and Devine's testimony focused on an incident in which Devine's attempt to approach the bench to object to the introduction of certain evidence was denied. Devine testified that throughout the trial he was not permitted to approach the bench, whereas the prosecutor was allowed to approach. According to Devine, the trial judge reasoned that the state could not create a mistrial by approaching, but that the defense could, an analysis that Devine disagreed with. Devine further testified that he briefed this issue on direct appeal, noting that three members of the Arkansas Supreme Court had dissented from the affirmance of the conviction.

The post-conviction court denied Ward's petition. On appeal to the state supreme court, Ward renewed his argument that his trial counsel was ineffective for failing to seek the recusal of the trial judge. The court held that the issue was not properly before it, noting that Ward did not argue that the failure to seek recusal prejudiced him, but instead asked the court to reconsider the issue in light of the dissenting opinion in Ward's direct appeal. Ward v. Arkansas, 84 S.W.3d 863, 866 (Ark. 2002). Because Ward did not present a convincing argument and did not cite any convincing legal authority, the court declined to reconsider the argument. Id. The Arkansas Supreme Court concluded that even if the issue were properly before it, the argument would still fail in light of its determination on direct appeal that no prejudice resulted from the trial court's actions. Id.

On May 27, 2003, Ward filed his petition for writ of habeas corpus in the United States District Court for the Eastern District of Arkansas, alleging that trial counsel was ineffective for failing to seek the trial judge's recusal.[4] Ward's petition

---

[4]Ward also alleged two other points of error. Because these arguments were not certified for appeal, we need not discuss them.

was filed by his state habeas counsel, acting pro bono after he discovered that Ward did not have federal habeas counsel and that the one-year statute of limitations was about to expire. The petition was described as a "placeholder" in motions made to the district court and to this court, but no amended petition was ever filed.[5]

On September 14, 2004, Ward's counsel moved for funds for investigation and mitigation assistance, stating that he had serious questions regarding Ward's mental health and that "[i]t may well be that Ward is actively psychotic." The motion was granted, and counsel hired an investigator/mitigation specialist. Ward, however, refused to cooperate with the investigation. In a letter to counsel, Ward stated that "there will be no life sentence, no plea bargains—I have proof they framed me and the charges will be dropped." Ward went on to write:

> I've never killed anyone in my life and after a quarter of a century of having bogus murder charges encroached upon me, I'm not going to tolerate it anymore. That's why I'm rejecting [the investigator], and why I won't let you have any control whatsoever in my case. It was my understanding that we were going to have a number of discussions first so that we wouldn't have any visionary conflicts. I'm not sitting-back-stupid anymore. My life, my way. You will take part in the preparatory phase but another lawyer will file stuff.
>
> Just take my calls for now and remember what you've promised so far. I've been planning this for 16 years.

Ward's counsel warned Ward that if he did not cooperate, counsel could withdraw and hand Ward's case over to the Federal Public Defender. In a letter, Ward's counsel

---

[5]Shortly after filing the habeas petition, Ward's counsel moved to withdraw and a different attorney was appointed to handle Ward's case. On July 19, 2004, that attorney withdrew from the case and Ward's previous counsel was substituted and appointed as Ward's habeas counsel.

explained that if the public defender's office took over the case, mitigation work would then be done:

> They will form the opinion that (1) you likely suffer from some sort of mental defect; that (2) because of this "defect," you cannot make a knowing, voluntary, or intelligent decision about whether mitigation should be investigated and presented; and that (3) because of all this, they have an obligation to "step in."

It appears that Ward also refused to sign release forms required to continue the investigation. The record does not contain any further information regarding the investigation, and no mitigation evidence was presented to the district court. Counsel did not seek a stay, and there was no docketed activity in Ward's case from the time the district court granted the motion for investigative funds on September 28, 2004, until the order denying Ward's petition for writ of habeas corpus on November 7, 2005.

In its order denying habeas relief, the district court held that Ward failed to meet his burden under 28 U.S.C. § 2254 because he relied heavily on the dissenting opinion on direct appeal and failed to "develop any meaningful argument" or "provide any substantive claim to support his assertion that prejudice occurred." As he did in his state court petition, Ward argued that he was entitled to a new trial because the trial judge was biased, as evidenced by the judge's refusal to allow defense counsel to make sidebar objections. The district court dismissed the claim, concluding that although the record contained examples of the trial judge's sarcasm and dislike for counsel, the judge's actions did not give rise to an unfair trial. Moreover, as the district court noted, Ward's trial counsel made the tactical decision not to seek the trial judge's recusal.

Ward applied for a certificate of appealability, which the district court granted with respect to Ward's claim of ineffective assistance of counsel. After timely filing

Ward's notice of appeal with this court, Ward's post-conviction counsel moved to withdraw. On January 30, 2006, we granted the motions to withdraw, appointed present counsel, and issued a briefing schedule.[6] On Ward's motion, we later stayed the briefing schedule and held the appeal in abeyance pending the district court's ruling on Ward's motion for relief from judgment under Federal Rule of Civil Procedure 60(b) and motion to alter or amend judgment under Federal Rule of Civil Procedure 59.

On August 15, 2006, Ward's newly appointed counsel moved for relief from judgment under Rule 60(b), arguing that Ward was incompetent to proceed before the district court on his petition for writ of habeas corpus.[7] In the brief, Ward's counsel represented that Ward "vehemently oppose[d] and ha[d] actively undermined any inquiry into his mental health and competence," but that counsel believed Ward to be incompetent and thus acted in Ward's best legal interest by filing the motion. Ward's counsel argued that relief from judgment was appropriate because Ward's incompetence rendered him unable to effectively communicate with his previous habeas counsel and thus unable to alert the district court of his inability to proceed. Moreover, despite previous counsel's diligence, Ward's incompetence was newly discovered evidence because the incompetence existed before the entry of judgment, but a medical diagnosis of it did not.[8] The brief also argued that the judgment was no

[6]Throughout the remainder of the opinion, we will refer to Ward's federal habeas counsel as previous counsel. When necessary, we will refer to Ward's counsel of record on or after January 30, 2006, as present counsel.

[7]Ward filed the motion under seal, but he later moved to unseal the motion and related filings. The district court granted that motion.

[8]Ward's present counsel hired a forensic psychiatrist to review materials relating to Ward, including present counsel's summaries of meetings and conversations with Ward, portions of the trial transcript, affidavits from Ward's trial counsel, an affidavit from a prison volunteer who has befriended Ward. The psychiatrist opined that Ward suffers from either paranoid schizophrenia or delusional

longer equitable and that the exceptional circumstances of this case called for relief from judgment under Rule 60(b). The motion asked the court to vacate its order denying relief and to stay the proceedings until Ward's competence could be restored.

The state argued that the motion was a second or successive habeas petition under 28 U.S.C. § 2244, and, as such, the district court lacked jurisdiction to consider it. The district court agreed and denied the motion. The district court concluded that because the motion was premised on Ward's competency at all stages of litigation, the claims could have been brought at some point prior to a Rule 60(b) motion. The district court determined that, even if properly before it, Ward's claim was without merit because it was premised on post-trial ineffective assistance of counsel. The district court also denied Ward's subsequent Rule 59 motion to alter or amend judgment. On August 7, 2007, the district court certified the following issue for appeal: whether the district court was correct in its ruling that Ward's Rule 60(b) and Rule 59 motions were second or successive petitions pursuant to 28 U.S.C. § 2244.

## II.

Through his counsel, Ward argues that the district court erred in construing his post-trial motions as second or successive habeas petitions because his motions did not present any "claims" as defined in Gonzalez v. Crosby, 545 U.S. 524 (2005). Instead, his incompetence is a procedural defect in the integrity of the habeas proceedings and thus is an appropriate basis for Rule 60(b) and Rule 59 motions. Ward's counsel argues that Ward's previous habeas counsel acted reasonably and diligently to pursue the issue of Ward's competence, but that Ward's psychosis thwarted those efforts.

---

disorder.

-9-

The district court's determination that Ward's Rule 60(b) and Rule 59 motions constituted second or successive habeas petitions is a conclusion of law that we review de novo. Williams v. Norris, 461 F.3d 999, 1001 (8th Cir. 2006). We conclude that Ward's motions, in substance, comprise a claim of ineffective or incompetent representation by federal habeas counsel. Although an assertion of ineffective assistance of habeas counsel may be characterized as a defect in the integrity of the habeas proceeding, it ultimately seeks to assert or reassert substantive claims with the assistance of new counsel. See Gonzalez, 545 U.S. at 532 n.5. Moreover, the Antiterrorism and Effective Death Penalty Act (AEDPA) specifically prohibits such grounds for relief.

Federal Rule of Civil Procedure 60(b) allows a habeas petitioner to seek relief from final judgment and to request the reopening of his case in certain circumstances. Rule 60(b) applies to habeas proceedings to the extent it is not inconsistent with AEDPA. Gonzalez, 545 U.S. at 529; see also 28 U.S.C. § 2254; Fed. R. Civ. P. 81(a)(4). AEDPA imposes three requirements on second or successive habeas petitions:

> First, any claim that has already been adjudicated in a previous petition must be dismissed. § 2244(b)(1). Second, any claim that has *not* already been adjudicated must be dismissed unless it relies on either a new and retroactive rule of constitutional law or new facts showing a high probability of actual innocence. § 2244(b)(2). Third, before the district court may accept a successive petition for filing, the court of appeals must determine that it presents a claim not previously raised that is sufficient to meet § 2244(b)(2)'s new-rule or actual-innocence provisions. § 2244(b)(3).

Gonzalez, 545 U.S. at 529-30. Rule 60(b) creates an exception to the finality of a district court's judgment in a habeas proceeding, so that "[i]f neither the motion itself nor the federal judgment from which it seeks relief substantively addresses federal grounds for setting aside the movant's state conviction, allowing the motion to

-10-

proceed as denominated creates no inconsistency with the habeas statute or rules." Id. at 533.

A Rule 60(b) motion is a second or successive habeas corpus application if it contains a claim. For the purpose of determining whether the motion is a habeas corpus application, claim is defined as an "asserted federal basis for relief from a state court's judgment of conviction" or as an attack on the "federal court's previous resolution of the claim *on the merits*." Gonzalez, 545 U.S. at 530, 532. "On the merits" refers "to a determination that there exist or do not exist grounds entitling a petitioner to habeas corpus relief under 28 U.S.C. §§ 2254 (a) and (d)." Id. at 532 n.4. When a Rule 60(b) motion presents a claim, it must be treated as a second or successive habeas petition under AEDPA.

No claim is presented if the motion attacks "some defect in the integrity of the federal habeas proceedings." Id. at 532. Likewise, a motion does not attack a federal court's determination on the merits if it "merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." Id. at n.4. This reasoning is illustrated in Gonzalez, in which the petitioner moved for relief from judgment challenging the district court's determination that his habeas petition was time barred under AEDPA. Because the motion challenged only the statute of limitations that applied to the habeas proceeding and did not assert a claim, the Supreme Court held that it was not a second or successive habeas petition. Id. at 535-36.

The Supreme Court has "note[d] that an attack based on the movant's own conduct, or his habeas counsel's omissions, ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." Id. at 532 n.5 (internal citation omitted). This is consistent with AEDPA's provision that states that "[t]he ineffectiveness or incompetence of counsel

during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). The statute's prohibition is broad, "[a]nd it bars 'relief,' not simply particular kinds of relief, such as a writ of habeas corpus." Post v. Bradshaw, 422 F.3d 419, 423 (6th Cir. 2005) (holding that petitioner's motion for relief from judgment based on post-conviction counsel's failure to pursue discovery was not permitted under AEDPA because the motion was grounded in a claim for incompetent and ineffective representation during the federal post-conviction collateral review).

Ward's counsel carefully argues that previous counsel could not have discovered Ward's incompetence and that previous counsel acted diligently and reasonably. This argument is designed to circumvent the Supreme Court's statement that omissions of habeas counsel are not procedural defects, as well as AEDPA's bar on claims of incompetent or ineffective representation in federal habeas proceedings. The problem, however, is that most of the factual support for Ward's alleged incompetency was available to previous counsel.[9] In fact, Ward's previous counsel questioned Ward's mental health and determined that Ward may have been "actively psychotic," but did not seek a stay of habeas proceedings. For these reasons, and those enumerated below, we conclude that the substance of Ward's motion is a claim for ineffective assistance of federal habeas counsel, and thus was correctly dismissed by the district court.

In the 2004 motion for funds for investigation and mitigation assistance, Ward's previous counsel stated that based on his conversations with Ward, "it was obvious, even from a layperson's perspective, that Mr. Ward was delusional. His paranoia is severe to the point that counsel has difficulty engaging in meaningful dialogue with him about his case." The court granted the motion, but the investigator/mitigation

---

[9]Ward would not meet with previous counsel, but apparently communicated with him by letter and by phone.

specialist could not complete his investigation because Ward refused to cooperate and refused to sign a release. Several letters were exchanged between Ward and previous counsel, including the above-described letter in which previous counsel threatened to withdraw from the case and turn it over to the federal public defenders, who would explore the matter of Ward's mental health and conduct a mitigation investigation. Ward's previous counsel believed that Ward might have been incompetent, yet counsel did not seek a stay of proceedings or otherwise notify the district court that Ward was incapable of assisting in the preparation of his habeas petition.

Additionally, the record is replete with examples of Ward's competency being called into question. In 1990, Ward was evaluated at the state hospital, and a competency hearing was held. In 1997, counsel moved to stay proceedings because Ward's "mental condition has deteriorated to the point where he can not or will not proceed with present counsel." In 1996 and 1997, Ward was again sent to the state hospital for evaluation, but refused to cooperate. In 2004, previous counsel moved for funds for mitigation and investigation assistance based on Ward's mental health. In 2004 and 2005, Ward refused to cooperate in the mitigation investigation. Ward's previous counsel had access to this information, yet did not alert the district court that he was unable to prepare and present Ward's habeas arguments. Cf. Garcia v. Quarterman, No. 08-70003, 2009 WL 1800141 at *4 (5th Cir. June 24, 2009) (holding that the prisoner's petition was not successive because purported defect did not arise, or the claim did not ripen, until after the conclusion of the previous petition).

The record also indicates that Ward's previous counsel may have failed him in other ways. Although previous counsel stated that the habeas petition was supposed to serve as a "placeholder," it was never amended. Nothing was filed in the district court in the thirteen months from the time it granted the motion for funds until it denied Ward's petition. Ward's trial counsel was familiar with Ward's previous habeas counsel and expressed concerns with the adequacy and competence of his

representation. In some letters, Ward demanded that his previous counsel take his calls. As the district court noted in its order denying Ward's Rule 59 motion:

> [I]n his motion for funding for a mitigation expert, Ward notified the Court that he intended to bring claims regarding his alleged diminished mental condition. The Court granted authorization and funding to pursue the mitigation claims on September 28, 2004. Yet, Ward did not present any results or evidence to the Court in an amended petition. The opportunity was available to him and he has failed to seize upon it.

Given the record we have before us, then, we conclude that Ward's Rule 60(b) and Rule 59 motions were improper because they were not based on a procedural defect, but rather attacked previous habeas counsel's omissions and asked for a second opportunity to have the merits determined favorably. See Gonzalez, 545 U.S. at 532 n.5. Ward's Rule 60(b) motion ultimately seeks to advance, through new counsel, new claims or claims that were previously considered and dismissed on the merits. See id. Ward's requested relief is thus barred by AEDPA, and we affirm the district court's dismissal of Ward's Rule 60(b) and Rule 59 motions.

### III.

Turning now to Ward's appeal from the denial of his habeas claim, the issue certified is whether Ward's constitutional right to effective assistance of counsel was violated when counsel failed to seek the recusal of the trial judge. In summary, Ward's argument is that the trial judge was biased, counsel failed to seek the judge's recusal, and that failure resulted in the structural error of a biased judge presiding over the guilt phase of Ward's trial. Trial before an impartial judge is a basic requirement of due process, Ward argues, and prejudice should be presumed because he was deprived of that right.

Ward's arguments to the state and federal district courts were confined to the trial judge's refusal to allow his attorneys the same opportunity to approach the bench that the prosecution was afforded. On appeal, Ward argues several other factual bases that allegedly demonstrate the trial judge's bias towards the prosecution. Accordingly, we must determine whether Ward fairly presented the substance of his claim to the state courts. Anderson v. Groose, 106 F.3d 242, 245 (8th Cir. 1997).

## A.

The habeas claim need not be an "exact duplicate" of the one raised in the state court proceedings, Odem v. Hopkins, 192 F.3d 772, 776 (8th Cir. 1999), but the petition must present the same legal and factual bases to the federal courts that were presented to the state courts. Anderson, 106 F.3d at 245. "The federal claim cannot contain significant additional facts such that the claim was not fairly presented to the state court, but closely related claims containing an arguable factual commonality may be reviewed." Id. (quoting Kenley v. Armontrout, 937 F.2d 1298, 1302-03 (8th Cir. 1991) (internal quotations omitted)).

We agree with the state that Ward is attempting to broaden impermissibly his ineffective assistance of counsel claim to include factual bases not raised before both the state courts and the district court. The only factual basis raised in support of Ward's claim was that counsel failed to seek the recusal of the trial judge after the judge displayed his bias by allowing the prosecution to approach the bench for sidebar conferences, while refusing to allow the defense to do the same. This fact supported Ward's claim in his initial post-conviction petition, and his trial counsel's testimony at the post-conviction hearing centered on it. Moreover, Ward asserted the same factual basis for his argument on appeal to the state supreme court and in his petition to the district court. In his state appellate brief, Ward alleged:

-15-

[T]rial counsel was ineffective for not seeking recusal of the trial court when it became apparent that a great risk of perceived favoritism existed when the trial court prohibited the defense from approaching the bench while on the same day of trial [it] permitted a sidebar at the request of the State.

Similarly, in his petition for habeas corpus to the district court, Ward alleged:

In Ward's initial trial, it became apparent that the trial judge was biased toward the prosecution. During the trial, the judge permitted counsel for the State to approach the bench and request a sidebar. On the other hand, the judge prohibited counsel for Ward from approaching the bench and insisted that counsel's objections be made in open court in front of the jury. Counsel never challenged the judge's actions or moved for the judge to recuse on the ground of bias.

Counsel's failure to object here was objectively unreasonable under Strickland.

Ward now asserts a number of factual bases that the state and district courts did not have the opportunity to consider. The district court did not reach the issue of whether Ward's federal claim involved arguable factual commonality with the state court claim, because Ward argued the same points to the state supreme court as it did to the district court. The district court reviewed the trial transcript and found examples of the trial judge's sarcasm and dislike for both the prosecution and the defense, but it concluded that Ward failed to prove his claim because he relied solely on the dissenting opinion in Ward's direct appeal. Ward's argument to this court contains significant additional facts that expand the scope of the claim he presented both to the state courts and the district court. We limit our review to the facts related to the argument made to the state courts.

B.

AEDPA limits the scope of our review in a habeas proceeding. If the issues raised in the petition were adjudicated on the merits in the state court proceeding, the petition must be denied, unless the state court disposition "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.§ 2254(d). A state court's findings are entitled to a presumption of correctness. Id. § 2254(e)(1).

Ward argues that the Arkansas Supreme Court's opinion is contrary to and an unreasonable application of clearly established federal law because it failed to recognize the inherent prejudice Ward suffered when his counsel failed to seek the recusal of the biased trial judge. The Sixth Amendment guarantees the criminal defendant the right to effective assistance of counsel. To state a claim for ineffective assistance of counsel, a habeas petitioner must demonstrate that counsel's representation was deficient and that the he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687 (1984). The "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. To show prejudice, the petitioner must demonstrate that there is a reasonable probability that the outcome would have been different but for counsel's deficient performance. Paul v. United States, 534 F.3d 832, 836-37 (8th Cir. 2008).

Ward does not contend that he can show prejudice under Strickland v. Washington. Rather, he argues that his case falls into the narrow exception to the general rule of Strickland that a defendant must prove prejudice. The Supreme Court has recognized that:

> We have spared the defendant the need of showing probable effect upon the outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. When that has occurred, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary. But only in "circumstances of that magnitude" do we forgo individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict.

Mickens v. Taylor, 535 U.S. 162, 166 (1984) (internal citations omitted); see also White v. Luebbers, 307 F.3d 722, 728-29 (8th Cir. 2002). As an initial matter, Ward has not shown that his trial counsel was deficient for failing to move for the recusal of the trial judge. Even assuming that counsel was deficient, the Strickland exception does not apply here. Ward does not argue that assistance of counsel had been denied entirely or at a critical stage of the proceeding, and we do not believe that Ward's case is analogous to the cases where prejudice has been presumed. Ward has not presented "circumstances of that magnitude" to justify dispensing with the usual requirement that prejudice must be shown.

We have presumed prejudice where counsel's deficient performance caused a defendant to be denied his constitutional right to a jury trial. Miller v. Dormire, 310 F.3d 600 (8th Cir. 2002) (finding presumption of prejudice when counsel waived jury trial without defendant's consent); McGurk v. Stenberg, 163 F.3d 470 (8th Cir. 1998) (finding presumption of prejudice when neither counsel nor the court informed defendant of his right to jury trial and defendant did not waive that right). In those cases, we concluded that counsel caused a structural error and thus reversal was required. We recognized that our holding was narrow and that "it will be a rare event when the failings of counsel rise to the level of structural error." McGurk, 163 F.3d at 475 n.5.

Ward argues that his case was tried before a biased judge, which is a structural error, and thus prejudice must be presumed and reversal is required. Every defendant is entitled to a fair trial in a fair tribunal, and fairness "requires an absence of actual bias in the trial of cases." In re Murchinson, 349 U.S. 133, 137 (1955); see also Jones v. Luebbers, 359 F.3d 1005, 1012-13 (8th Cir. 2004). But Ward's is not a case where the judge had a pecuniary interest in the outcome of the case, Tumey v. Ohio, 273 U.S. 510 (1927), or where the judge acted as a one-man grand jury and then presided over the trial, In re Murchinson, 349 U.S. 133 (1955). Rather, as earlier recounted, the allegations of bias in this case relate to disparate treatment accorded to defense counsel's requests to approach the bench. However ill-founded the trial court's reasoning may have been, its rulings on those requests did not reflect actual or presumed bias rising to the level of a constitutional violation or a structural error. See Holloway v. United States, 960 F.2d 1348, 1355 (8th Cir. 1992) (Unfavorable judicial ruling is "insufficient to require disqualification absent a showing of pervasive and personal bias and prejudice." (internal quotations omitted)); Harris v. Missouri, 960 F.2d 738, 740 (8th Cir. 1992) ("An unfavorable judicial ruling . . . does not raise an inference of bias or require the trial judge's recusal."). Accordingly, even assuming that counsel was ineffective for failing to move for the trial judge's recusal, Ward has not shown a structural error requiring reversal.

Conclusion

We affirm the district court's judgment that it lacked jurisdiction to consider Ward's Rule 60(b) and Rule 59 motions because the motions were second or successive habeas petitions under AEDPA. We also affirm the district court's order denying Ward's petition for habeas corpus.

MELLOY, Circuit Judge, concurring in part and dissenting in part.

Although I agree with several aspects of the majority's well-written opinion and concur in part III, I dissent as to part II. I would hold that Ward's allegations do not present a "claim" but relate to a "defect in the integrity of the federal habeas proceedings," Gonzalez v. Crosby, 545 U.S. 524, 532 (2005), and that his allegations do not, "in substance, comprise a claim of ineffective or incompetent representation by federal habeas counsel." Ante at 10. Federal Rule of Civil Procedure 60(b)(6) permits reopening in extraordinary circumstances, Ackermann v. United States, 340 U.S. 193, 199 (1950), and I would direct the district court to enter a stay and hold an evidentiary hearing to afford it the opportunity to make a factual finding as to Ward's competency. Nothing in AEDPA precludes federal evidentiary hearings on matters such as this; Ward has presented more than a colorable claim of present incompetence and of changed circumstances following the state trial court's 1990 competency ruling; and ineffective or incompetent federal habeas counsel is not the only possible explanation for Ward's failure to seek a stay at an earlier stage of the federal proceedings.

The U.S. Supreme Court stated in Gonzalez that if Rule 60(b) motions in § 2254 cases do not contain "claims," district courts are to treat such motions as Rule 60(b) motions and not as successive habeas petitions. Gonzalez, 545 U.S. at 533 ("When no 'claim' is presented, there is no basis for contending that the Rule 60(b) motion should be treated like a habeas corpus application."). "'[C]laim' as used in § 2244(b) is an asserted federal basis for relief from a state court's judgment of conviction." Id. at 530. The Court noted that "[i]n most cases, determining whether a Rule 60(b) motion advances one or more 'claims' will be relatively simple." Id. at 532.

I agree that "[i]n most cases" the application of Gonzalez will be simple. Based on the facts of Gonzalez and several hypotheticals discussed therein, the Court explained that, where a non-merits determination prevents a district court from

-20-

reaching the merits of habeas petition, a Rule 60(b) motion seeking to revisit that non-merits decision is not to be treated as a successive petition. Id. at 533–35. Such were the facts of Gonzalez, where the petitioner alleged in his Rule 60(b) motion that the district court had misapplied a federally created statute of limitations. In a footnote, the Court listed analogous situations, stating that a movant does not present a "claim" in a Rule 60(b) motion "when he merely asserts that a previous ruling *which precluded a merits determination* was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar." Id. at 532 n.4 (emphasis added). The Court noted this distinction repeatedly in its opinion. See, e.g., id. at 534 ("The motion here, like some other Rule 60(b) motions in § 2254 cases, confines itself not only to the first federal habeas petition, but to a nonmerits aspect of the first federal habeas proceeding."); id. at 538 ("A motion that, like petitioner's, challenges only the District Court's failure to reach the merits does not warrant such treatment, and can therefore be ruled upon by the District Court without precertification by the Court of Appeals pursuant to § 2244(b)(3).").

In cases where a district court actually reaches the merits of the claims in a habeas petitioner's first petition, it often will be simple to identify impermissible successive petitions masking as Rule 60(b) motions based upon the relief the movant requests or the substance of the arguments the movant asserts. Direct challenges to a district court's merits ruling will on their faces seek relief from a state court judgment and should be treated as successive petitions. Id. at 532 ("[A]lleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is, under the substantive provisions of the statutes, entitled to habeas relief."). Less direct challenges, like (impermissible) ineffective assistance claims seeking to assert or reassert challenges to the state court conviction, often will identify claims or evidence that federal habeas counsel purportedly failed to assert or assert effectively. Such motions, while attempting to assert attorney error as a gateway argument, undoubtedly present "claims" that will require the district court to treat the motions as successive petitions. Id. at 532 n.5 ("[A]n attack based on the movant's own conduct, or his habeas counsel's omissions ordinarily does not

go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." (internal citation omitted)).

In a narrow class of cases, however, the question of how to characterize the Rule 60(b) motion will not be "relatively simple." Gonzalez, 545 U.S. at 532. Such cases, like the present case, will involve requests for relief from judgments that have already addressed the merits of underlying habeas petitions, but the requests for relief will be based upon something other than the substance of the merits ruling. The immediate relief a movant seeks in such a motion may be a request for a stay or some further proceeding in the district court rather than relief from the state court judgment. As in the present case, the arguments will assert that the district court judgment or underlying proceedings were somehow invalid or defective, but not due to any alleged error with the district court's substantive analysis of the merits of the first habeas petition.

Determining how to characterize the Rule 60(b) motion in such cases is not simple because there are two reasonable ways to view such motions. On the one hand, the arguments in any such case will be merely first steps on a path towards the "ultimate" or "bottom-line" goal of asserting or reasserting arguments or evidence to challenge the state convictions. See, e.g., Post v. Bradshaw, 422 F.3d 419, 424–25 (6th Cir. 2005) ("[A]ll that matters is that [the petitioner] is seeking vindication of or advancing a claim by taking steps that lead inexorably to a merits-based attack on the prior dismissal of his habeas petition." (internal quotations and alterations omitted)). A focus on this "ultimate" or "bottom-line" goal seemingly would result in almost universal characterization of Rule 60(b) motions as successive petitions. The state asserts this argument in the present appeal, characterizing Ward's motion in terms of what he might "ultimately seek" and asserting categorically that Rule 60(b) motions must be deemed successive petitions in all cases where a district court has already ruled on the merits, regardless of the nature of the movant's arguments.

On the other hand, it is reasonable to look at the immediate relief a movant seeks rather than focusing only on the question of whether the movant eventually will seek to challenge a state court judgment. See, e.g., Rodriguez v. Mitchell, 252 F.3d 191, 198 (2d Cir. 2001) ("[W]hile [the Rule 60(b) motion] is undoubtedly a step on the road to the ultimate objective of invalidating the judgment of conviction, it does not seek that relief. It seeks only to vacate the federal court judgment dismissing the habeas petition."); see also Mitchell v. Rees, 261 F. App'x 825, 829 (6th Cir. 2008) (unpublished) ("[T]he focus of the inquiry is not on whether the court reached the merits of the original petition but on whether the Rule 60(b) motion contains a claim."); Zakrzewski v. McDonough, 490 F.3d 1264, 1267 (11th Cir. 2007) ("Petitioner's motion does not assert or reassert allegations of error in his state convictions. Thus, Petitioner's 60(b) motion is not a second or successive habeas petition, and the district court has jurisdiction to consider the motion and to decide its merits."); Pridgen v. Shannon, 380 F.3d 721, 727 (3d Cir. 2004) (holding that a district court may address a Rule 60(b) motion that challenges the proceedings surrounding an earlier habeas judgment rather than the underlying state conviction itself). For this narrow class of cases that are not "relatively simple," then, it is necessary to determine whether it is proper, under Gonzalez, to look only at the immediate relief a Rule 60(b) movant seeks or whether it is proper to take an expanded view of the movant's goals and look several steps down the road at the movant's expected, eventual attempt to assert or reassert a challenge to his state conviction.

In the present case, the Majority appears to have adopted the state's preferred reading of Gonzalez, stating:

> "Ward's . . . motions were improper because they were not based on a procedural defect, but rather attacked previous habeas counsel's omissions and asked for a second opportunity to have the merits determined favorably. Ward's . . . motion *ultimately seeks to advance, through new counsel, new claims or claims that were previously considered and dismissed on the merits.*"

-23-

<u>Ante</u> at 14 (emphasis added).  Other circuits have adopted this view.  <u>See, e.g.</u>, <u>Post</u>, 422 F.3d at 424–25.  I would hold that this position goes too far in limiting district courts from entertaining Rule 60(b) motions.

The Majority's argument, if accepted, would establish an analytical framework inconsistent with <u>Gonzalez</u> by precluding consideration even of Rule 60(b) motions analogous to one of the examples that the Court cited in <u>Gonzalez</u>.  In <u>Gonzalez</u>, the Court referred to "[f]raud on the federal habeas court" as a qualifying defect and cited <u>Rodriguez</u> where a district court had ruled on the merits of a habeas petition and where the Second Circuit subsequently held that the Rule 60(b) motion was not to be treated as a successive petition.  <u>Gonzalez</u>, 545 U.S. at 532 n.5 (citing <u>Rodriguez</u>, 252 F.3d 191).  In making its point, the Court quoted <u>Rodriguez</u>, characterizing the fraud as "related to the integrity of the federal habeas proceeding, not to the integrity of the state criminal trial."  <u>Id.</u> (alteration omitted).  In effect, the fraud on the court impugned the integrity or validity of the district court's judgment, opening the door to Rule 60(b) review, even though the practical effect of such a holding, necessarily, could lead to the potential assertion or reassertion of substantive arguments at some later stage.

In <u>Rodriguez</u>, the Second Circuit had described the tension between the above-described viewpoints that would consider a movant's immediate claim for relief, on the one hand, and the "ultimate" objective of all habeas petitioners, on the other.  The court stated:

> The fact that the Rule 60(b) motion contemplates ultimately the vacating of the conviction is shared with every motion the petitioner might make in the course of pursuing his habeas—motions to compel disclosure or quash the respondent's discovery demands, motions for extension of time to answer the adversary's motion, motions to be provided with legal assistance, motions for summary rejection of the respondent's contentions. All such motions, like the motion under Rule 60(b), seek to advance the ultimate objective of vacating the criminal conviction. *But each seeks relief that is merely a step along the way*. In our view, neither

-24-

these motions, nor the motion under Rule 60(b) that seeks to vacate the dismissal of the habeas petition, should be deemed a second or successive petition within the meaning of 28 U.S.C. § 2244(b).

Rodriguez, 252 F.3d at 198–99 (emphasis added).

By citing Rodriguez and describing fraud on the court as a qualifying "defect," the Court in Gonzalez showed that a "defect in the integrity of the federal habeas proceeding[]" need not be limited solely to cases where alleged errors prevent district courts from reaching the merits of petitioners' underlying claims for habeas relief. Gonzalez, 545 U.S. at 532 & n.5. Rather, the Court recognized the authority of district courts to entertain Rule 60(b) motions as necessary to police their own proceedings and ensure the integrity and validity of their own rulings. The expanded view of relief sought by a movant, i.e., the state's view that it is proper to focus on the omnipresent goal of all habeas petitioners to, eventually, obtain relief from a state court judgment through a second merit-based determination in federal court, cannot be reconciled with the Court's use of the "fraud-on-the-court" example. In a case like Rodriguez, the petitioner has already received a ruling on the merits, albeit from a flawed proceeding, and the "ultimate" effect of the Rule 60(b) motion would be a return to district court for a second merits ruling. By invoking the fraud example, the Court necessarily focused the inquiry on the more immediate relief sought rather than the ultimate or expanded goal of the petitioner/movant.

In his motion, Ward does not seek to revisit a merits ruling or attack a state court judgment. Rather, he alleges his incompetence amounts to a defect in the federal proceedings. The relief he seeks is a stay pending restoration of competence, and regardless of whether he is actually entitled to this scope of relief, it is not possible to characterize his motion as containing claims without adopting an expanded view of his overall goals. I would hold that his motion does not contain a claim.

Although I disagree with the majority as to the necessity of focusing on Ward's presumed ultimate goal rather than his immediate claim for relief, I agree that it is

-25-

necessary to consider whether his argument is merely an ineffective assistance of counsel argument masking as an attack on a defect in the proceedings. It will often be appropriate to characterize alleged defects as allegations of attorney error or waiver by the party. I discern no reason for doing so, however, where such characterization is not compelled by the facts. In the context of Rule 60(b) motions for relief from federal judgments, we are not directly concerned with issues of federalism, and, as per Gonzalez, the restrictive aspects of AEDPA review only come into play if we first conclude the motion contains a claim. Given this context, if the unusual facts of a case present a scenario in which a district court's Rule 60(b) review might be appropriate to prevent an injustice or correct a defective proceeding, it would seem advisable to leave open the possibility of having the district court address the motion.

Relief in accordance with Rule 60(b) is rare in all contexts. As the Court noted in Gonzalez, "several characteristics of a Rule 60(b) motion limit the friction between the Rule and the successive-petition prohibitions of AEDPA, ensuring that . . . harmonization of the two will not expose federal courts to an avalanche of frivolous postjudgment motions." Gonzalez, 545 U.S. at 534–35. As such, I would not unnecessarily limit Rule 60(b) relief by too readily characterizing a movant's arguments as ineffective assistance claims.

Importantly, Gonzalez permits careful scrutiny of petitioners' motions to assess whether the arguments are permissible or whether they are, in reality, ineffective assistance claims. In the same footnote that contained the cite to Rodriguez, the Court explained that "ordinarily" a Rule 60(b) argument "based on the movant's own conduct, or his habeas counsel's omissions . . . does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably." Gonzalez, 545 U.S. at 532 n.5. This general statement follows naturally from the unobjectional proposition that a party's actions or the actions of a party's attorney, while providing great influence over the direction of proceedings, ordinarily do not impact the integrity of those proceedings or the validity of judgments rendered

therein. Such influences, however, are not always benign, and it is not necessarily appropriate to characterize the actions of an incompetent petitioner as the actions of a party. See Rohan ex rel. Gates v. Woodford, 334 F.3d 803, 809–15 (9th Cir. 2003) (noting the inability of incompetent prisoners to communicate with their attorneys, relay facts known only to themselves, or effectively waive rights); see also Holmes v. Buss, 506 F.3d 576, 578 (7th Cir. 2007) (characterizing Rohan as resting at least in part on the fact that "a waiver of a legal right (concretely, the right to seek postconviction relief) must, to be effective, be knowing, implying mental competence"). By using the hedging language "ordinarily," the Court recognized the possibility that situations could arise where a party's or counsel's conduct might not preclude a district court from entertaining a Rule 60(b) motion. The Court presumably used this language to avoid creating excessive dicta purporting to establish a bright-line rule as to possible "defects" that were unrelated to the facts of Gonzalez.

Regarding the characterization of Ward's motion in particular, the present case is by no means "ordinary," and I do not read the Court's footnote as precluding further district court proceedings. Ward presents compelling evidence showing a deterioration of his mental condition following the 1990 competency hearing (the only arguably complete assessment of his competency), culminating in delusional beliefs, a recalcitrant attitude, and a refusal to cooperate with his attorneys or mental health professionals. As noted by the majority, Ward's previous counsel stated to the district court in a 2004 motion that "it was obvious, even from a layperson's perspective, that Mr. Ward was delusional. His paranoia is severe to the point that counsel has difficulty engaging in meaningful dialogue with him about his case." The Majority infers from this disclosure and from other evidence at all stages of state and federal proceedings that Ward's counsel was ineffective in not seeking a stay in the district court and that a grant of a stay or any relief is therefore barred by 28 U.S.C. § 2254(i).

If Ward's mental state was so obviously reduced, however, and if the district court had notice of this fact, it is not clear to me that it is wholly appropriate to lay

responsibility for any resulting defect solely at the feet of Ward or his counsel. I would hold that the district court's responsibility to maintain the integrity of the proceedings and validity of its judgments imposes on the district court, in the face of such facts, a duty to suspend proceedings and ensure competency. See Godinez v. Moran, 509 U.S. 389, 401 n.13 (1993) ("[A] competency determination is necessary only when a court has reason to doubt the defendant's competence."). The finality of the death penalty and the importance of airing all evidence and issues completely in a first habeas petition place a heightened responsibility on district courts in such circumstances, and I would hold that a petitioner's competency is required in habeas proceedings.[10] See Rohan, 334 F.3d at 811–13 (explaining a right to competency in federal habeas proceedings, and noting the prejudice that may ensue from allowing the critical initial habeas proceeding to pass without meaningful participation by the prisoner); Mata v. Johnson, 210 F.3d 324, 331 (5th Cir. 2000) (enforcing a federal habeas competency requirement and remanding for further proceedings where the evidence demonstrated that a habeas petitioner had a thirty-year history of documented mental health problems, but the district court had denied habeas relief without conducting a competency hearing).

Accordingly, I would treat the motion as a Rule 60(b) motion rather than as a successive petition, and I would remand for further proceedings.

_____

---

[10]In Clayton v. Roper, 515 F.3d 784, 790 n.2 (8th Cir.), cert. denied, 129 S. Ct. 507 (2008), our court noted that we have not yet considered whether a defendants' competency is required in habeas proceedings. I would hold such a requirement exists and that the "test should be whether the defendant (petitioner, appellant, etc.) is competent to play whatever role in relation to his case is necessary to enable it to be adequately presented." Holmes, 506 F.3d at 578–79 (discussing Rohan, and describing a generalized test for competency sufficient to apply in different contexts).